## MRS. RIKE STERNHEIM v. ANDREW JACKSON HOTEL OPERATING CO.—305 S. W. (2d) 249.

Middle Section, Nashville.　May 3, 1957.

Petition for Certiorari denied by Supreme Court July 29, 1957.

614

John K. Maddin, Jr., Nashville, for plaintiff in error.

Manier, Crouch & White, Jack Norman, Nashville, for defendant in error.

I

SHRIVER, J. This suit was brought to recover damages for personal injuries sustained by plaintiff as a result of a fall on the evening of September 10, 1954, while she was a guest in the Andrew Jackson Hotel.

Plaintiff was attending a dinner in the Commodore Room of the hotel and in leaving said room to go to the ladies rest room she proceeded through a set of double doors leading into a vestibule where she fell down the steps which were located immediately behind this doorway. The fall caused her serious and permanent injuries, including a broken hip.

The declaration contains only a common law count which alleges that plaintiff was a guest of the hotel when injured, having gone there for the purpose of attending a meeting and a dinner. She arrived at the meeting in the company of one or two other guests at approxi-

mately five o'clock p. m. at which time the pair of single action swinging doors which opened out of the Commodore Room into a vestibule, were standing open. The plaintiff entered the Commodore Room, attended the meeting and dinner which followed for two hours or more, and when she sought to leave the room she found the above mentioned doors closed. She proceeded through one of the doors, pushing it open, and fell down the steps which were located just twelve inches behind the door.

The declaration charges that the condition maintained by the hotel operating company with respect to said doors and the hidden location of the steps behind them, constituted negligence on the part of the defendant which proximately caused the injuries complained of.

The declaration further charges that, in spite of the best medical attention available, both in Nashville and in Chicago, plaintiff's fractured hip failed to heal and resulted in her permanent disability.

The case was tried in the Third Circuit Court before judge E. F. Langford and a jury, and, at the conclusion of the plaintiff's proof, defendant moved the Court to direct a verdict in its favor, which motion was granted.

A motion for a new trial was made and overruled and the cause appealed in error to this Court.

After the record was filed here, the plaintiff, Mrs. Rike Sternheim, died, and the cause has been revived in the name of her administratrix.

## II

The assignments of error are as follows:

"1. The trial judge erred in overruling Ground I

of Plaintiff's Motion for a New Trial, which was as follows:

" 'The Court erred in sustaining the defendant's objection to the admission of the testimony of witness for the plaintiff, J. D. Roach, who in the absence of the jury testified that the doorway leading from the Commodore Room, and at which point the plaintiff was injured, was not constructed in a reasonable manner or by an approved standard for the protection of the public.'

"2. The trial judge erred in overruling Ground 2 of Plaintiff's Motion for a New Trial, which was as follows:

" 'The Court erred in sustaining the defendant's objection to the admission into evidence by way of the witness, J. D. Roach, Sections 324 and 328 of the Code of the City of Nashville, which were offered to show that the defendant had notice of a minimum reasonable standard of protection to be afforded guests, with particular reference to the doorway which opens upon steps.'

"3. The trial court erred in overruling Ground 3 of Plaintiff's Motion for a New Trial, which was as follows:

" 'The Court erred in sustaining defendant's motion and peremptorily instructing the jury to return a verdict in the defendant's favor.' "

### III

Mrs. Sternheim testified that she was eighty-four years of age March 5, 1956. On the occasion in question, she arrived at the Commodore Room of the Andrew Jackson Hotel, which is located on the Mezzanine Floor, some

time between four and five o'clock p. m. Upon entering said room in company with some other people, she did not notice whether there were steps leading from the vestibule into the room or not, but did recall the two large doors which, at the time of her entrance, were chained open. She attended a meeting in the Commodore Room and was there for more than an hour, and did not leave the room until the conclusion of the dinner, at which time she inquired as to the whereabouts of the ladies rest room and was going to said rest room when she fell. On reaching the doorway she found the doors closed.

She then testified as follows:

"Q. Mrs. Sternheim, will you state what occurred when you reached the door leaving the Commodore Room on this occasion? A. Well, the two doors were closed and I was going to the Ladies Room and I pushed the door open.

"Q. Which door did you go to, the right-hand or left? A. The right-hand.

"Mr. White: 'I can't hear her.'

"By Mr. Maddin, Jr.:

"Q. You went to the right-hand door? A. Yes, sir.

"Q. Describe, if you will, Mrs. Sternheim, what occurred after you put your hand on the door? A. Well, I pushed the door open and was going to walk out and that is all I remember. I fell.

"Q. Now, I will ask you, Mrs. Sternheim, if, as you pushed the door open, you took a step or not.

"Mr. White: If Your Honor please, he is only leading—

"The Court: Don't lead.

"Mr. Maddin: I will try not to, if Your Honor please.

"Q. Will you tell us whether or not you continued your motion as you pushed the door open? A. I just walked straight. I didn't know there were any steps there and I fell down.

"Q. What, Mrs. Sternheim, is the next thing you remember? A. Not until the next morning.

"Q. The next morning? A. I woke up.

"Q. Where were you the next morning? A. At the hospital.

"Q. Which hospital was that? A. Vanderbilt Hospital.

\* \* \* \* \* \*

"Q. Now, Mrs. Sternheim, you said a moment ago that you didn't know that the steps led into the Commodore Room. Have you since your injury gone back to determine whether or not there are steps outside of the room? A. Yes, sir.

"Q. Are there steps there? A. Yes, sir.

"Q. Why didn't you see those steps when you were in there? A. Well, I pushed the door open and I walked out. I didn't know there were any steps there. I just walked straight out.

"Q. Now, when you were leaving the meeting, was there any reason as far as you know why you didn't see the steps? Was there anything to call you attention to them? A. No sir, I just walked out."

A photographer testified on behalf of plaintiff with regard to certain photographs which were taken, and exhibits Nos. 1, 3, and 4 particularly, to the testimony of Anthony Hopkins, show very plainly the condition and location of the doors and steps where this accident occurred.

Mr. Douglas Roach testified that he was chief building inspector of the City of Nashville and certain evidence was sought to be introduced as to whether, in his opinion, there was a reasonable standard of protection for the public leaving the Commodore Room by way of the doors and the steps in question. This was objected to and was excluded.

A son of the plaintiff testified, and while he did not see Mrs. Sternheim fall, he heard a noise and heard her call out and upon rushing to the place, found her on the floor outside the door.

Exhibit No. 4 to the testimony of Anthony Hopkins, which is a photograph showing the door and steps in question with yard sticks or rulers indicating their width, height etc. From the door to the edge of the stepdown it is twelve inches. In other words, there is a twelve inch space from the closed door to the edge of the steps. The stepdown is six inches, and then there is a landing

thirteen inches wide and another stepdown of about five inches, to the floor of the vestibule.

Plaintiff was in the dining room where she had gone in company with some other people while both doors were chained open and, as she stated in her testimony, she did not observe whether there were steps going into the room or not. Some hour and a half or two hours later, she started to leave the room to go to a rest room and, when she came to the door in question it was closed, she put her hand against it and pushed it open, stepping forward at the same time, and fell on the steps thus located.

## IV.

There are two questions for our determination;

1. Was the defendant guilty of negligence in maintaining these steps only twelve inches beyond a swinging door which was used by its guests, as a means of ingress and egress, without any warning sign or other device to call attention to said condition?

2. Was plaintiff guilty of contributory negligence, as a matter of law, so as to bar her recovery, in failing to see and observe the steps which were just beyond the door through which she proceeded, in the manner described in the declaration and in the proof?

The precise question presented here is whether or not there was a jury question, or, to state it another way, whether or not the minds of reasonable persons might differ as to the existence of negligence, and contributory negligence.

## V.

Let's examine some of the authorities relative to these two questions.

In Philip Carey Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 164 S. W. 1183, 51 L. R. A., N. S., 340, one of the early opinions written by Judge Grafton Green, it was said that the question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury.

The Court further said: (129 Tenn. at page 37, 164 S. W. at page 1185.)

"The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery. [Citing numerous cases]. * * *

"We must decline, therefore, to say that the defendant in error as a matter of law was guilty of such contributory negligence as to defeat his suit. This question should have been left to the jury under a proper charge."

In Illinois Cent. R. Co. v. Nichols, 173 Tenn. 602, 118 S. W. (2d) 213, it was held that liability of a property owner to an invitee for injuries sustained, is grounded on the owner's superior knowledge of the perilous condition of the premises.

In quoting from 20 R. C. L. p. 107, the Court said (173 Tenn. at page 615, 118 S. W. (2d) at page 218):

"In more familiar form the proposition is as follows: liability is established when it is shown that the peril, being of the defendant's creation, was known to the defendant, but not to the person injured; and no liability is predicable of the injury when it appears that the injured person's knowledge of the danger surpassed or equaled that of the defendant."

In Rye v. City of Nashville, 25 Tenn. App. 326, 156 S. W. (2d) 460, it was held that, to impose liability in damages for harm caused by a dangerous thing, the thing must be dangerous according to common experience.

In Loew's Nashville and Knoxville Corp. v. Durrett, 18 Tenn. App. 489, 79 S. W. (2d) 598, it was said that an invitee may rely on the safety of premises if he is not aware of danger, or where there is no reason to apprehend danger. However, Mrs. Durrett was denied a recovery in this case because it was said that she assumed the risk. She had entered the theater and had proceeded toward a seat in the balcony down some steps where it was dark. She testified that she could not see but that she felt along with her foot and started down the steps, and, after proceeding for two or three steps, she fell and injured herself.

It was said by the Court that a patron entering a motion picture theater balcony, whose attention was forcibly drawn to the absence of an usher to attend her and to the darkness of the aisle and who knew and appreciated that there was danger of falling if she attempted to descend the steps in the darkness, but who attempted to feel her way down the aisle to the seat and fell, assumed the risk of the known danger and was guilty of contributory negligence precluding recovery.

It is to be noted that, in the case at bar, the step that caused the injury was immediately behind a closed door, hence, the plaintiff herein could not have seen the step as she proceeded to the door, nor could she have seen it when she first pushed the door ajar. She could only have seen it had she pushed the door open wide enough to observe the condition before stepping out.

We do not believe that common experience would indicate that the average person, unacquainted with the existence of such conditions, upon going through a door in a public place, such as the one described here, would stop to carefully examine the floor ahead before stepping forward, in anticipation of the existence of hidden steps behind it. On the other hand it is evident, as a physical fact, that any one proceeding through this door, who stepped forward as the door was pushed open, in all probability, would reach the edge of the landing with a single step forward, simultaneously with the opening thereof, and, thus would be likely to fall.

These conditions, of course, were known to the hotel management corporation but, as Mrs. Sternheim testified, she had not had her attention directed to the steps as she went through the open doors. We think that, being

in company with other persons as she walked into this place for the first time, it is not unusual that she failed to recall that there were steps behind the doors which were closed, and which were, thus, in a different position than when she entered.

In Osborn v. City of Nashville, 182 Tenn. 197, at page 204, 185 S. W. (2d) 510, at page 513, it was held;

" 'The question of the defendant's liability lawfully can be withdrawn from the jury and determined by the court as a question of law, when and only when the facts are undisputable, being stipulated, found by the court or jury, or established by evidence that is free from conflict, *and when the inference from the facts is so certain that all reasonable men, in the exercise of a fair and impartial judgment, must agree upon it.*' 20 R. C. L. 169, 170, 171, sec. 141; Lovier v. City of Nashville, 1 Tenn. App. 401; Park City v. Owens, 7 Tenn. Civ. App. 359; Jackson v. City of Nashville, 17 Tenn. 413, 417, 68 S. W. (2d) 137." (Italics ours.)

When all proper inferences favorable to plaintiff are drawn from the evidence, we are not prepared to say that all reasonable men, in the exercise of fair and impartial judgment, must agree that the defendant was free from actionable negligence or that plaintiff was guilty of such contributory negligence, as a matter of law, that she is barred from a recovery.

It results that assignment No. 3, is sustained.

The case is reversed and remanded for a new trial.

Reversed and remanded.

Felts and Hickerson, JJ., concur.