## WOOTEN C. MERRELL, Plaintiff-in-Error, v. CHICK-ASAW HOTEL COMPANY, Defendant-In-Error.—362 S. W. (2d) 262.

Western Section. July 28, 1961.

Certiorari Denied by Supreme Court December 8, 1961.

George A. McCormick, James M. Tharpe, Memphis, for plaintiff in error.

Lake Hays, Laughlin, Watson & Creson, Memphis, for defendant in error.

CARNEY, J. The plaintiff below, Mr. Merrell, appeals from a judgment of the lower court sustaining defendant's motion for a directed verdict at the conclusion of his proof. His suit was for damages for injuries sustained when he fell into the rest room at the Chisca Hotel in Memphis, Tennessee. He has filed only one assignment of error which challenges the correctness of the directed verdict against him.

Plaintiff was injured on the night of January 30, 1959, while a guest at a duck dinner given by the Toothpick Club of Memphis, Tennessee. After the dinner was over and before the speeches began, the plaintiff left the banquet to go to the men's rest room which was located across a corridor from the banquet hall. About the time the plaintiff grasped the knob of the door to the rest room some person opened the door from the inside. The plaintiff was thrown off balance, caught his toe on a six inch step-up and fell forward into the rest room. He was severely injured sustaining a broken shoulder and several teeth were knocked out when he fell to the tile floor and possibly struck some of the fixtures in the room.

Plaintiff's declaration alleged that the corridor outside the rest room door was dimly lighted; that there was no light or sign or notice indicating that there was a six inch step-up; that the defendant hotel company was negligent in not having a doorman present when crowds were attending dinner and using the rest room and that the defendant was negligent in not having separate doors for entrance and exit from said rest room.

The corridor was fourteen feet wide and the door to the rest room was almost directly opposite the door through which the plaintiff left the banquet hall. The door

opened outward into the corridor and at the top on the corridor side of the door there was a mechanical closer. A photograph in the record shows the floor of the corridor to be covered with black and white tile blocks about one foot square each. The door and frame were stained mahogany or walnut and the wall was a much lighter color than the door and frame. A black baseboard approximately six inches high ran along the corridor wall and under the door. About one inch of marble extruded from the floor of the rest room under the door and was visible from the corridor.

Plaintiff's testimony as to how his injuries were sustained is as follows:

"A I reached with my left hand to open the door, because I had a cigarette holder in my mouth, and I just put it up there and I fell.

"Q That is what I am trying to get straight. You did use your left hand?

"A It's been over a year.

"Q You remember everything that took place that night, don't you?

"A Pretty good. I have got a pretty good memory.

"Q But it was your left hand instead of your right hand?

"A That I reached for it, yes.

"Q That you reached for the door?

"A Yes.

"Q As you reached for the door somebody was reaching for the door on the inside to come out, were they not?

"A Yes.

"Q And you had—

"A He was coming out just as I was going in.

"Q You had your hand on the door, did you not?

"A Yes.

"Q And when he came out, with your hand on the door it threw you off balance, didn't it?

"A That's right. I kind of stepped back and started forward.

"Q You stepped back and lost your balance and you fell, didn't you?

"A I started forward and caught my toe on the step up.

"Q You had already lost your balance before you caught your toe on the step up?

"A Leaning forward.

"Q I say you lost your balance.

"A I didn't say I lost my balance. I said it threw me off balance.

"Q You were thrown off balance and then caught your toe on the step up, is that correct?

"A Yes, sir, that is correct. If the step up hadn't been there I never would have hung my toe on it.

"Q Did you open the door first or did the man on the inside open the door?

"A I pulled on it first.

"Q And when he opened it, it threw you off balance?

"A It kind of got me off balance. It threw me off balance, and when I went forward it hung my toe.

"Q You keep saying it threw you off balance. Is that not correct?

"A I did say it.

"Q Isn't it true that you testified before in answer to this question:

"'Q That you lost your balance and opened the door?

"'A I lost my balance as I started in. When I opened the door that threw me off balance.'

"Isn't that correct?

"A I don't know how you put it.

"Q I am just reading the way you testified, Mr. Merrell, and ask you if that is not a fact?

"A You have got it written down there.

"THE COURT: Ask him if he gave that answer.

"Q Didn't you in the previous trial on this case give the following answers to these questions:

"'Q Then you lost your balance and opened the door?

"'A I lost my balance as I started in. When he opened the door that threw me off balance.'

"Didn't you testify that way before?

"A Something like that. Didn't I put in about me catching my toe in the step up?

"Q I am asking you if you testified that way before?

"A That is what I said.

"Q The point is that when he opened the door that threw you off balance, isn't that correct?

"A Yes.

"Q It was after you lost your balance or were thrown off balance that you caught your toe and fell forward into the restroom, is that correct?

"A Correct.

"Q Did you ever see the man standing in the door?

"A Naturally, when he came out you look up to see, and glance up.

"Q He was standing in the door and you fell past him into the restroom, is that correct?

"A Yes.

"Q Do you know who he was?

"A No, I do not. You see, I don't know very many people up there.

\*　　\*　　\*　　\*　　\*　　\*

"Q Mr. Merrell, you lost your balance before you ever got to the step up, didn't you?

"A No, sir, I was right at the step up, right up against it.

"Q Just a minute. You didn't lose your balance before you got to the step up?

"A How come I lost it before I got to the door?

426

"THE COURT: Answer the question.

"Q I am asking you, isn't it true that you lost your balance when the gentleman came out of the restroom from inside?

"A As I reached for the door.

"Q That's right. You hadn't attempted to negotiate the step up at that time, had you, Mr. Merrell?

"A No.

"Q Because you had to step back in order to open the door, isn't that correct?

"A Not when it comes this way you don't.

"Q That is when you lost your balance, when the man opened the door?

"A Yes.

"Q And you weren't trying to negotiate the step up at that time at all, were you, Mr. Merrell?

"A No, but I hung my foot on it.

"Q You hung your foot on it when you fell?

"A No, that is what made me fall.

"Q The step up made you fall?

"A Sure.

"Q Let me ask you if you didn't testify on the last trial as follows:

"Mr. Merrell, this is a question of you by myself:

" 'Q But you weren't off your balance at all commenced to fall until the man came out of the door, isn't that correct?

" 'A He was coming out just as I was coming in, and that naturally, that threw me off my balance, and trying to regain it I caught my toe and fell in.'

"Isn't that correct, isn't that what you testified to before?

"A Well, if it is down there. But you put it one way and I put it another.

"Q I am just reading to you, Mr. Merrell, just like the stenographer took it down. I am not putting it any way. Isn't that what you testified to before?

"A If it is down there I did.

"Q Was it correct?

"A It must have been because I told the truth then and I am telling it now. But I am not a lawyer. I don't jabber around.

"Q Then I asked this question:

" 'Q You were thrown off your balance by your hand being on the door?

" 'A Naturally.

" 'Q Leaning over you went off your balance?

" 'A When you catch your toe naturally you are going to fall.

" 'Q You were thrown off your balance before you were going into the restroom?

" 'A Just as I was going into the restroom.'

"A I was off my balance as I was going in not before. As I was going in.

" 'Q Being off balance you fell into the restroom as you were going in, is that correct?

" 'A Yes, sir.

" 'Q How wide was this door open? Was it open all the way?

" 'A Open wide enough for both of us to stand in the door.

" 'Q For him to come out and for you to go in, is that right?

" 'A That's right. I hesitated, naturally that threw me off balance, and then I fell in.'

"Q Is that correct?

"A That is correct.

"Q Are we correct now? He threw you off balance when he opened the door, Mr. Merrell?

"A I didn't say he threw me off balance. When he hesitated. I didn't lose my balance. I was off balance but that doesn't mean you are going to fall unless there is something going to make you fall."

The plaintiff and his witnesses testified that the hallway was dimly lighted but it is admitted that the rest room itself was brightly lighted.

The plaintiff did not testify that he stumbled on the six inch step-up because the hallway was dimly lighted and he couldn't see it but on the contrary he expressly testified that he stumbled on the six inch step-up and fell into the rest room because he was thrown off balance when the door unexpectedly opened and the person came out directly in front of him. His Honor the Trial Judge

was of opinion that the dimly lighted corridor was not a cause of plaintiff's injuries nor was the six inch step-up.

We feel constrained to agree with His Honor the Trial Judge. Even though the corridor was dimly lighted the rest room itself was brightly lighted, by the plaintiff's own testimony, and the white marble floor was plainly visible from the corridor when the door was opened. There was nothing to keep plaintiff from noticing the six inch step-up as he opened the door and the plaintiff does not testify that he didn't see the six inch step-up. We think all reasonable men must come to the conclusion that the plaintiff's injuries were caused by his being thrown off balance when the door to the rest room unexpectedly opened in front of him.

Plaintiff relies very strongly upon the recent case of Sternheim v. Andrew Jackson Hotel Operating Company, (1957) 42 Tenn. App. 613, 305 S. W. (2d) 249. In that case a lady plaintiff left the dining room of the hotel to go to the rest room. She walked through double doors of the dining room and fell down some steps which were twelve inches beyond the double doors through which the plaintiff left the dining room. In that case the Court of Appeals reversed the action of the Trial Court in directing a verdict for the defendant.

In our opinion the Sternheim case is substantially different from the case at bar in that in the Sternheim case the plaintiff fell down some steps just outside a door through which she was travelling whereas in the present case the plaintiff fell up a step just on the other side of a door which he was opening. In the Sternheim case there is no suggestion that the plaintiff fell for any reason except her failure to see or realize the presence of the

step-down whereas in the present case the proof affirmatively shows that the plaintiff stumbled or fell over the step-up after being thrown off balance by the unexpected opening of the door.

Therefore, the judgment of the lower court will be affirmed, plaintiff's appeal-in-error dismissed at his cost.

Avery, P.J. (W.S.), and Bejach, J., concur.