Osborn *et al. v.* City of Nashville *et al.*

(*Nashville,* December Term, 1944.)

Opinion filed February 3, 1945.

DAVID M. KEEBLE and WALKER & HOOKER, all of Nashville, for appellants Osborn (plaintiffs below).

W. C. CHERRY, of Nashville, for City of Nashville, appellee (defendant below).

W. M. FUQUA, of Nashville, for appellee Collins (defendant below).

MR. JUSTICE GAILOR delivered the opinion of the Court.

The plaintiffs, Mrs. Beaumont Osborn and her husband, S. M. Osborn, brought these two suits, which were consolidated and tried together, against the City of Nashville and against Dr. R. G. Collins and his wife, for damages for the negligent injury of Mrs. Osborn on account of the dangerous condition of the concrete sidewalk in front of property owned by Mrs. Collins in the City of Nashville.

About five months before the accident this sidewalk had been painted by the defendant R. G. Collins. In the declaration, negligence of the defendants Collins was predicated on the following statement; that Mrs. Beaumont

Osborn, while walking along this sidewalk, "slipped and fell as the result and on account of the defective and negligent condition of said sidewalk due to the fact that said sidewalk had been negligently painted with enamel paint, which made said sidewalk slick, wet and dangerous." Liability of the defendant City was predicated on the statement that it had knowledge of this dangerous condition of the sidewalk, or by the exercise of reasonable care, should have had knowledge of it, and took no steps to abate the dangerous condition. After all the evidence the trial judge permitted the plaintiffs to amend their declaration by striking out the words "with enamel paint," and to allege that said sidewalk was slick "when wet." After motions for peremptory instruction had been overruled as to the City and Dr. Collins, and granted as to Mrs. Collins, the case went to the jury and a verdict of $2,000 was returned in the case of Mrs. Osborn for personal injuries, and of $500 in the case of her husband for medical expenses and loss of services. Motions for new trial were duly made and overruled and the case was appealed to the Court of Appeals. That Court, by a divided Court, reversed the judgment and dismissed the case.

The plaintiffs, only, have filed petition for *certiorari* with assignments of error which we have granted, have heard argument, and the cases are now before us for disposition.

▆▆ Since the questions presented are the same in both cases and, in the present state of the record, the decision of one controls the other, we will consider the case of Mrs. Osborn and refer to the parties as plaintiffs and defendants, as they appeared in the trial court. The only question presented by the appeal is whether the trial judge was justified by the evidence in submitting to the

jury, the questions of negligence and contributory negligence. This question is formally presented in the petition for *certiorari* by the insistence that the Court of Appeals usurped the province of the jury in disregarding plaintiffs' proof and holding that the defendants were not guilty of negligence, and apparently also holding that plaintiff was guilty of contributory negligence. Where, under such circumstances, petition for *certiorari* is filed by plaintiff alone, this Court will not weigh the evidence, but will consider only the evidence and the necessary inferences to be drawn from it that are most favorable to the plaintiff. *Hines* v. *Partridge*, 144 Tenn. 219, at page 233, 231 S. W. 16; *Nashville* v. *Reese*, 138 Tenn. 471, at page 479, 197 S. W. 492, L. R. A. 1918B, 349.

The province of this Court is not to reweigh the evidence, 'but to leave that duty where the Constitution has placed it, with the jury, as triers of facts, and if they act capriciously and arbitrarily to supervise their action.'' *Jackson* v. *B. Lowenstein & Bros., Inc.,* 175 Tenn. 535, at page 538, 136 S. W. (2d) 495, 496.

For some considerable time prior to the accident plaintiffs had lived at 917 4th Avenue South, in Nashville, on the west side of that street, and defendants Collins had lived at 906 4th Avenue South, on the east side, where Collins not only had his residence but also conducted a dog and cat hospital. On the morning of the accident and immediately prior thereto, Mrs. Osborn crossed the street in front of her house to go to the A & P Store, which was on the same side of the street and north of Collins' home. It was drizzling rain at the time and Mrs. Osborn had never before walked on the east side of the street since it had been painted by defendant Collins. She said in the course of her testimony:

''I went up about five doors before I got to his sidewalk, (Collins) when I got in front of his house I fell. The street was as slick as glass, and I fell right in front of his entrance.''

There was further positive, unimpeached testimony for the plaintiff that defendant Collins had painted the sidewalk with thick, glossy paint some five months prior to the accident. That this made a slippery surface on the sidewalk when it was wet. That the unpainted sidewalk on either side of the painted sidewalk was not abnormally slippery even when wet. That immediately prior to her fall, plaintiff having walked along the unpainted sidewalk safely, slipped and fell in front of defendants Collins' gate on the painted sidewalk. That she was wearing oxfords with moderately high heels with rubber tips at the time of her fall. That prior to plaintiff's fall, others had slipped and fallen on the painted sidewalk when it was wet. That city policemen and city firemen on foot and in patrol cars in the street, had passed the painted sidewalk and observed its condition. That if the specific kind of paint applied by defendant Collins was applied to an unclean surface, such misapplication would result in a slick and slippery surface, and that defendant Collins had applied the paint without first washing or cleaning the sidewalk.

 That an abutting owner, who himself changes the condition of the public highway, may be liable to those in lawful use of said highway for consequent injury to them, cannot be doubted. A private interloper, who for his own selfish purposes, changes the condition of the highway and interferes with its maintenance by public authority, must use reasonable care for the safety of those in lawful use of the highway, and we think the jury is justified in giving careful scrutiny to the method that he adopts

in changing the condition of the highway and the purposes for which the change was made, in estimating what is reasonable care under the circumstances.

"The liability of an individual who without authority of law creates a dangerous condition in the highway, to a person injured thereby, is generally based on the theory that the defect or obstruction constitutes a nuisance, and accordingly it has been decided that the liability of such person is not affected by the question whether he was actually negligent; . . ." 40 C. J. S., Highway Sec. 252, p. 287.; *City of Knoxville* v. *Baker,* 25 Tenn. App. 36, 150 S. W. (2d) 224.

"Whether a defect in a highway is an actionable one, is a question for the jury, unless conditions and circumstances are so clear and convincing as to leave no room for reasonable controversy." *Batts* v. *City of Nashville,* 22 Tenn. App. 418, 423, 123 S. W. (2d) 1099, 1102.

It is elementary that when there is material evidence that either of the parties has acted with a lack of care and the lack of care is causally connected with the injury, a jury question is created:

"The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty

of contributory negligence which would bar his recovery."
*Carey Roofing & Mfg. Co.* v. *Black,* 129 Tenn. 30, 36, 37,
164 S. W. 1183, 1185.

"The question of the defendant's liability lawfully can
be withdrawn from the jury and determined by the court
as a question of law, when and only when the facts are
undisputable, being stipulated, found by the court or jury,
or established by evidence that is free from conflict, and
when the inference from the facts is so certain that all
reasonable men, in the exercise of a fair and impartial
judgment, must agree upon it." 20 R. C. L. 169, 170, 171,
sec. 141; *Lovier* v. *City of Nashville,* 1 Tenn. App. 401;
*Park City* v. *Owens,* 7 Tenn. Civ. App. 359; *Jackson* v.
*City of Nashville,* 17 Tenn. App. 413, 417, 68 S. W. (2d)
137.

From our review of the evidence of the plaintiff
of the facts and circumstances of her fall, and its proxi-
mate cause, we are convinced that issues of fact were
created, which justified the trial judge in submitting the
case to the jury for determination under the rule laid
down in *Carey Roofing & Mfg. Co.* v. *Black, supra,* and
the other cases cited.

A Kentucky case presents facts and questions of law
essentially the same as the case before us here. The
owner of a moving picture theater, for purposes of ad-
vertisement, laid tiles in the sidewalk in front of the
theater lobby. A lady pedestrian slipped and fell on the
slippery surface so created. In affirming the action of
the trial court in submitting the issues of negligence and
contributory negligence to the jury, the Chief Justice of
the Court of Appeals of Kentucky said:

"It may be confessed that, if there were no contradic-
tions in the evidence upon that subject, and all of the
evidence conduced to prove the conclusions drawn from

it by counsel for defendants, they were eminently right in their contention, but when the evidence as to the character of the tiled portion of the sidewalk, with regard to its condition of safety for travel, is examined, it is apparent that the evidence upon that subject is very contradictory, and made necessary a submission to the jury of that issue, and the fact that we would arrive from the evidence at a conclusion different from that at which the jury arrived is aside from the subject, nor will a conclusion upon our part, if we had been the triers upon the facts, that the verdict should have been upon the issue for the defendants, warrant a conclusion that the issue ought not to have been submitted." *City of Newport* v. *Schmit*, 191 Ky. 585, 231 S. W. 54, 56.

To the same effect, compare *Cummings* v. *Henninger*, 28 Ariz. 207, 236 P. 701, 41 A. L. R. 207 and annotation.

Here, as in the Kentucky case, the dangerous condition created in the sidewalk was of such character as to allay, rather than to arouse apprehension of danger in the pedestrian lawfully using the highway. Those cases, therefore, where there are "cracks" and "holes" in the sidewalk, or other obstructions resulting from new construction or repair, are not in point, because the very smoothness and regularity of the painted sidewalk was calculated to justify the belief that the painted sidewalk had been deliberately rendered more, rather than less safe for travel by pedestrians. It is suggested that because Mrs. Osborn wore rubber heels at the time of her fall that she was so guilty of contributory negligence, we cannot approve a theory that the exercise of reasonable care required her to change her shoes or to leave the sidewalk and take to the gutter to make a safe way by her neighbor's premises. In any event, we have limited

our holding to the rule that these questions were for the jury's determination, and not for ours.

■■ Considering next the liability of the defendant City of Nashville, it is elementary that if the City, which has the exclusive duty of control and maintenance of the streets and highways within its limits, knew of the dangerous and defective condition, or by the exercise of reasonable care, should have known it, and did nothing to remedy the condition, the City is liable as a joint tortfeasor. It is in evidence that the sidewalk had been painted for more than four months; that the condition was obvious and made so expressly by the defendant Collins for the purpose of advertising and attracting notice to his place of business. During that time City policemen used his office to telephone headquarters, and police in squad cars frequently passed the premises. Notice to its policemen was notice to the City. *City of Nashville* v. *Nevin,* 12 Tenn. App. 336. In reason and common sense, the rule laid down for City policemen should apply alike to City firemen, and a City fireman, testified here for the plaintiff that he knew the condition of the sidewalk and that when it was wet it was "plenty slippery."

■ The City insists in its brief and on argument before this Court, that the Court of Appeals pretermitted certain assignments of error made by it in that Court, but the City has filed no petition for *certiorari,* so that these matters are not properly before us for consideration. *Brown* v. *Brown,* 155 Tenn. 530, 296 S. W. 356; *Lillard* v. *Tolliver,* 154 Tenn. 304, 285 S. W. 576.

It results that the assignments of error presented by the petition for *certiorari* must be sustained, the judgment of the Court of Appeals reversed and the judgment of the trial court affirmed. The defendants, respondents here, will divide the costs.