SCHINDLER *et al. v.* SOUTHERN COACH LINES, INC.

(Two Cases).

(*Nashville,* December Term, 1948.)

Opinion filed January 17, 1949.

Rehearing denied March 11, 1949.

CHARLES L. CORNELIUS, JR. and C. WEBER TULEY, both of Nashville, for plaintiffs in error.

ARMISTEAD, WALLER, DAVIS & LANSDEN, of Nashville, for defendant in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

We adopt from a memo opinion of Mr. Justice TOMLINSON, used in conference on the petition for *certiorari*, the following:

"Maud K. Schindler commenced this action to recover damages for injuries received as a result of alleged negligence upon the part of the Southern Coach Lines, Inc. Her husband instituted a companion suit to recover loss of services. The two cases were tried together.

"The Circuit Judge overruled the motion for a directed verdict at the close of the plaintiff's evidence, saying that he wanted to hear what the defendant had to say about how this accident occurred. The motion was renewed and sustained at the close of all the evidence on the ground (1) that there was no evidence of negligence upon the part of the defendant, and (2) the injuries were received by reason of the negligence of the plaintiff, Mrs. Schindler.

"The Court of Appeals has concurred in this finding of the Circuit Judge and Mrs. Schindler and her husband have filed this petition.

"Mrs. Maud K. Schindler was a clerk at Harvey's Store in Nashville. She went off of duty at 6 P. M. On this particular February evening in 1947 she was anxious to get home by 6:30 for some reason not stated in the record. She had missed the bus of defendant on which she was accustomed to ride to and from work and was waiting for another when she saw the bus involved in this accident standing at the intersection of the streets

waiting for the traffic lights to change in its favor. It was the bus that would also carry her to her home. She crossed the street, hurrying to this bus, ran around to the door and knocked on it, thereby requested the operator to open the door and permit her to enter. After waiting a second he opened the door by a lever or button. It was opened in the usual manner and performed in the manner to be expected. When this door opens it projects outward for probably six inches beyond the body of the bus. On this occasion as the driver opened it in response to the request of this lady, it struck her, knocked her down and the result was that she received serious injury. The suit is predicated upon the theory that it was the duty of the bus driver to make certain that she wouldn't be hit by the door as it opened, and that it was by reason of a failure to perform this duty that the accident ocurred.

■■■ "The plaintiffs invoked the rule of *res ipsa loquitur*. That rule does not apply. *Res ipsa loquitur* raises a presumption of negligence by the happening of the event in the absence of any other evidence as to why the accident occurred. That rule does not apply to cases where the accident is alleged and shown to have occurred by reason of a specific act. 'Where proofs are present, there is neither foundation nor room for presumption.' *Frank* v. *Wright,* 140 Tenn. 535, 546-548, 205 S. W. 434. In the instant case, the proof is that the accident occurred because Mrs. Maud K. Schindler was standing too close to the body of the bus when the door opened, and the allegation is that it was negligence for the driver to open this door until she stood further back from the bus.

■■ ■■ "There is some discussion in the briefs as to whether Mrs. Schindler was a passenger at the time she received the injury. The reason for this discussion is

that the public carrier is charged with the exercise of a high degree of care as distinguished from ordinary care, with reference to those who are passengers on its vehicle. The act of getting into the bus for transportation is, of course, an essential element of becoming a passenger. I think, therefore, that in consideration of this petition we should regard Mrs. Schindler as a passenger, and hence that the Bus Company owed to her the duty of exercising a high degree of care in admitting her to the bus.

"The bus driver was on the opposite side of the bus from the door. He was only waiting for the light to change in his favor and move on when this lady requested him to open the door for her. The driver's statement of the immediate transaction is this:

" 'I turned around and looked at the door, it looked like plenty of clearance, it looked like the door wouldn't hit her and I opened the door.' . . .

" 'Well, we are taught that way when we are opening the door, especially up town where there are a number of people to get on, to watch the door as a safety measure to be sure there is plenty of clearance.'

"Mrs. Schindler had traveled on this bus or busses exactly similar each day for a number of years in going to and from work. She says that she did not know at the time she received this injury that the door projected beyond the body of the bus as it was being opened. She stated the immediate transaction to have occurred in this manner:

" 'The door came open with a bang, violently, and knocked me backwards, and I threw my hand—I saw my head was going to hit, and I threw my hand back to kind of catch my lick, and I hit so hard that I just couldn't get up, and I felt the bones just crush in my right wrist, and

I didn't know what happened for a few minutes. I was unconscious for a few minutes, nerve shocked.' . . .

" 'I just walked up, right up to the door and knocked' . . . 'I didn't have to reach out at all.' . . .

" 'I didn't step back, I was knocked back violently knocked.' "

The applicable rule to be followed under the facts and circumstances presented by this record is well stated by Mr. Justice GAILOR, speaking for this Court, in *Osborn et al.* v. *City of Nashville*, 182 Tenn. 197, 203, 185 S. W. (2d) 510, 513, as follows:

"It is elementary that when there is material evidence that either of the parties has acted with a lack of care and the lack of care is causally connected with the injury, a jury question is created:

" 'The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury.' Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidnece is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery. [*Philip*] *Carey Roofing & Mfg. Co.* v. *Black*, 129 Tenn. 30, 36, 37, 164 S. W. 1183, 1185 [51 L. R. A., N. S., 340]

" 'The question of the defendant's liability lawfully can be withdrawn from the jury and determined by

the court as a question of law, when and only when the facts are undisputable, being stipulated, found by the court or jury, or established by evidence that is free from conflict, and when the inference from the facts is so certain that all reasonable men, in exercise of a fair and impartial judgment, must agree upon it.' 20 R. C. L. 169, 170, 171, sec. 141; *Lovier* v. *City of Nashville,* 1 Tenn. App., 401; *Park City* v. *Owens,* 7 Tenn. Civ. A. 359; *Jackson* v. *City of Nashville,* 17 Tenn. App. 413, 417, 68 S. W. (2d) 137.''

From our review of the evidence of the plaintiff of the facts and circumstances of her injury, and the proximate cause thereof, we are convinced that issues of fact were created, which required that the case be submitted to the jury for determination under the rule above quoted.

 It was practically conceded in argument that the relationship of carrier and passenger existed at the time of the occurrence of the plaintiff's injury. Such being true the defendant owed to the plaintiff the highest degree of care for her safety consistent with the general practical conduct of his business. *Greyhound Lines Inc.* v. *Patterson,* 14 Tenn. App. 652, 656, 657; *Tennessee Coach Co.* v. *Young,* 18 Tenn. App. 592, 80 S. W. (2d) 107. ''There would seem to be general accord upon the proposition that the same high degree of care is required of the carrier as to passengers when entering or leaving the vehicle as when being transported therein.'' 10 Am. Jur., Sec. 1348, p. 924.

Is such a requisite degree exercised when the operator of the carrier opens its door so violently that the passenger is ''violently knocked'' backward and down causing the serious injury here complained of when this operator saw the passenger and her position? Obviously the question must receive a negative answer.

Of course it is a well settled legal principle that "she is held to knowledge of all dangers that were obvious or patent or could have been discovered by her by reasonable observation and use of her senses." Opinion, Court of Appeals. This being true may we as a matter of law know or assume that the plaintiff knew these doors opened outwardly to such an extent that they would hit her and cause the injury complained of? She denies she knew this to be true. It seems to us that this very question makes a fact question for the jury. Then if she is guilty of standing too near these doors, when they were to be opened, this would be a matter of her contributory negligence which is ordinarily for the jury. *Hall* v. *Nash*, 184 Tenn. 312, 198 S. W. (2d) 649. Under the factual situation presented in this record it is a question for the jury to say whether or not the driver of the bus exercised the requisite degree of care in opening the bus door in view of the surrounding circumstances. We certainly should not, as a matter of law, say the plaintiff was guilty of such contributory negligence as to bar her right of action. Whether she knew or should have known, by the exercise of ordinary care, that the door would swing out, as it did, and hit her is a factual question for the jury. A bus door in normal working order should not "come open with a bang, violently, and knocked me backwards."

It must be remembered that we are testing the sufficiency of the evidence viewed in the light most favorable to the plaintiff—we are not now weighing the evidence.

The Supreme Court of Arkansas in *Missouri Pacific Transp. Co. et al.* v. *Sharp*, 194 Ark. 405, 108 S. W. (2d) 579, 581, affirmed a verdict for the plaintiff against a bus company on evidence that: "As he was in the act of

leaving the bus upon reaching his point of destination, the driver opened the door, and before appellee could alight the driver jerked the door shut, striking him upon the head, and knocked him backward over and against some other object, inflicting injury.''

We cite this case because it seems analogous to the present case in that the relationship of the parties is the same; in one case the passenger is inside and the other outside; the bus door is violently shut striking the passenger in each case. Obviously the qustion is a factual question of whether or not the bus operator used the requisite care required in either case under the surrounding circumstances.

Under a like situation the Supreme Judicial Court of Massachusetts in *Harrison* v. *Boston Elevated R. Co.,* 1944, 316 Mass. 463, 55 N. E. (2d) 707, 708, held the carrier liable under facts and reasoning as follows:

''The plaintiff signalled the operator to stop as the bus approached his destination. He walked toward the front of the bus and stepped down upon the platform where he waited for the doors to open. The doors swung inward half way when one of them, according to the plaintiff's testimony, 'came in over my toe and caught my toe and jammed it.' The operator then gave the door an extra pull as it rested against the plaintiff's toe. The plaintiff uttered an exclamation and the operator closed the doors. . . .

''It could be found that there was nothing about the appearance of the platform to indicate that it was dangerous for one to stand there while the bus was coming to a stop in response to his signal to the operator, unless he knew or ought to know that the doors would swing inward and might injure him. The jury, however, could find that the doors as they remained closed, as they did

while the bus was coming to a stop, did not indicate that they swung inward in opening. A finding was warranted that it was not unusual or unnatural for a passenger who was ignorant of the method by which the doors opened to stand on the platform, preparatory to leaving the bus. . . .

."The jury could find that an operator who had received a signal to stop might reasonably anticipate that the passenger might stand on the platform; that he could have easily ascertained the whereabouts of the passenger; and that if he found the passenger was on the platform it was negligence to attempt to open the doors without warning him to move away from the doors".

Obviously the above quoted reasoning is applicable to the instant case.

So, the majority of the Court,—Neil, Chief Justice and Tomlinson, Justice, being of the contrary opinion,—are of the opinion that the facts present a question for the jury to determine.

For the reasons set forth in this opinion the judgment of the two lower courts must be reversed and the cause remanded to the Circuit Court for a new trial.

Gailor and Prewitt, JJ., concur.

Neil, C. J., and Tomlinson, J., dissent.

## On Petition to Rehear.

A courteous, dignified and respectful petition to rehear has been filed herein.

The burden of said petition is that we decided the case on the theory that, "A bus door in normal working order

should not come open with a bang violently and knock me backwards'', rather than on the theory as set forth in the plaintiffs' declaration to wit: ''The said driver saw or should have seen the plaintiff at said door of the bus, but that nevertheless he wrongfully, negligently, and in violation of the duty owed the plaintiff by the defendant, caused the said door to open when he knew or should have known that it would strike the plaintiff.''

It was not our purpose or intention to decide this lawsuit on a theory contrary to that as set forth in the plaintiff's declaration. The statements that we made in reference to being violently opened and violently knocked back, etc., were merely made in *arguendo*. The gist of our conclusion in this case is contained in the following language: ''We certainly should not, as a matter of law, say the plaintiff was guilty of such contributory negligence as to bar her right of action. Whether she knew or should have known, by the exercise of ordinary care, that the door would swing out, as it did, and hit her, is a factual question for the jury.''

We felt that the cases we cited in the concluding portion of our opinion were analogous to the instant case, not because the door in those cases was opened violently, but they were open when the operator could or should have seen that they would strike the injured party. In the instant case the plaintiff states that she did not know that the door would open out as it did and strike her and then the driver of the bus testified, ''I turned around and looked at the door, it looked like plenty of clearance, it looked like the door wouldn't hit her and I opened the door.''

In our original opinion with reference to what has just been said about the evidence, we said: ''It seems to us

that this very question makes a fact question for the jury."

In 38 American Jurisprudence, at page 1067, Section 358, it is said: "Under the broad general rule that the question of contributory negligence is ordinarily one of fact to be decided by the jury where there is a dispute in the facts and the evidence is conflicting, the question of contributory negligence in not appreciating or in failing to observe the dangers incident to one's situation is generally one for the jury and is rarely a question of law for the court. One cannot be convicted of contributory negligence as a matter of law unless the danger was so glaring and obvious as to threaten immediate injury. In other words, it is for the jury to determine whether knowledge of the physical characteristics of the offending instrumentality constituted a sufficient warning of peril to the plaintiff."

We have very carefully considered the petition to rehear and the majority of this Court are thoroughly convinced that under the factual situation here presented, a jury question is made.

For the reasons above set forth, the petition to rehear must be denied.