Mrs. Fletcher Harvey JENKINS, Administratrix, Plaintiff-Appellee,

v.

ASSOCIATED TRANSPORT, INC., Defendant-Appellant.

Frank L. WHALEY, Plaintiff-Appellee,

v.

ASSOCIATED TRANSPORT, INC., Defendant-Appellant.

Nos. 15322, 15323.

United States Court of Appeals
Sixth Circuit.

April 17, 1964.

708

Andrew Johnson, Stuart F. Dye and Calvin N. Taylor, Knoxville, Tenn., W. K. Fillauer, Cleveland, Tenn., on the brief, for Mrs. Fletcher Harvey Jenkins, Administratrix, Cheek, Taylor & Groover, Knoxville, Tenn., of counsel.

S. F. Dye and Andrew Johnson, Knoxville, Tenn., for Frank L. Whaley, Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., of counsel.

Andrew J. Evans, Jr., and Thomas W. Thomson, Knoxville, Tenn., Frank B. Creekmore, Knoxville, Tenn., on the brief, Creekmore & Thomson, Knoxville, Tenn., of counsel.

Before O'SULLIVAN, Circuit Judge, MAGRUDER, Senior Circuit Judge, and LEVIN, District Judge.

O'SULLIVAN, Circuit Judge.

Defendant-Appellant, Associated Transport, Inc., seeks reversal of two judgments entered upon a jury verdict rendered in a consolidated trial of a wrongful death action and a personal injury action. In the death case, plaintiff-appellee, Frances Jenkins, Administratrix of the estate of her deceased husband, Fletcher Harvey Jenkins, was awarded $70,000.00; in the personal injury case, plaintiff-appellee, Frank L. Whaley, was awarded $100,000.00. The death and personal injuries were the result of a highway collision between a small pick-up truck driven by the deceased Jenkins and a large tractor-trailer owned by defendant and driven by its employee. Plaintiff Whaley was a passenger in Jenkins vehicle.

Plaintiffs' proofs contained testimony that the Jenkins vehicle was proceeding westerly on a highway that runs easterly from the city of Knoxville; that while so proceeding, it was bumped from the rear by a passenger automobile, causing it to wobble for a short distance, but that its driver quickly regained control of it; that thereupon defendant vehicle, approaching from the opposite direction and travelling at an illegally high speed, crossed the center line of the road and struck the Jenkins vehicle head on, driving it back along the highway for a distance of about 175 feet. Plaintiff Jenkins' decedent, Fletcher Jenkins, was instantly killed and plaintiff Whaley was severely, and permanently, injured.

We will discuss defendant-appellant's claims of reversible error as follows:

1) *Sufficiency of plaintiffs' evidence.*

■■ Appellant states its question in this regard as a claim that the District Judge erred in holding that there was substantial evidence to support the jury's verdict. No motion for direction of· a verdict, motion for judgment N.O.V. or motion for new trial[1] on this ground was made. We will consider the point. We apply the same test, however, as if we were considering whether a verdict should have been directed. Tenn. Cent. Ry. Co. v. Schutt, 2 Tenn.App. 514, 515; Southern Ry. Co. v. Lewis & Adcock Co., 139 Tenn. 37, 44, 201 S.W. 131, L.R.A. 1918C, 976; F. W. Woolworth Co. v. Connors, 142 Tenn. 678, 688, 222 S.W. 1053. We test appellant's claim by viewing plaintiffs' evidence in its most favorable light. Hinton v. Dixie Ohio Exp. Co., 188 F.2d 121, 124 (CA 6, 1951); Illinois Cent. R. Co. v. Abernathey, 106 Tenn. 722, 64 S.W. 3; Illinois Cent. R. Co. v. Porter, 117 Tenn. 13, 94 S.W. 666. There was direct, eyewitness testimony by Whaley, plaintiff passenger, that defendant's vehicle was going from 50–60

---

1. The motion for new trial asserted that the verdict was contrary to the weight of the evidence and that the evidence preponderated against the verdict of the jury.

miles per hour and crossed the center line of the road into the path of the Jenkins vehicle, and there struck it. As discussed below, this testimony found some support in testimony as to skid marks, by a State Trooper who came to the scene very shortly after the collision. A picture identified by such witness corroborated his own observation of a skid mark which he identified as having been made by defendant's truck in crossing the center line into the path of the Jenkins vehicle. Defendant produced two eyewitnesses who contradicted plaintiffs' evidence. There was also photographic evidence as to post-collision marks on the highway, from which an inference might be drawn supportive of defendant's claim that its driver was not negligent. All of this, however, made questions of fact to be resolved by the jury. Schindler v. Southern Coach Lines, Inc., 188 Tenn. 169, 217 S.W.2d 775; Osborn v. City of Nashville, 182 Tenn. 197, 185 S.W.2d 510; Dickerson v. Shepard-Warner Elevator Co., 287 F.2d 255, 259 (CA 6, 1961); Baird v. Cincinnati, New Orleans & Texas Pacific Railway Co., 315 F.2d 717, 720 (CA 6, 1963). If plaintiffs' evidence was accepted as true by the jury, it made out a case of liability.

Defendant's principal argument on the point of the sufficiency of plaintiffs' evidence is that physical facts uncontrovertibly overcame plaintiffs' evidence. The proofs did show that the defendant's truck, at a point some distance beyond the point of impact, went off the highway from its own lane of traffic and turned over. The Jenkins pickup truck came to rest in the south, or defendant's, lane of the highway and a small trailer that had been attached to it ended up off the south side of the pavement. A photograph of the pavement disclosed a gouge in it which a Trooper described as "a jagged place * * * a dug out place in the pavement caused by the impact of the vehicle." This gouge was within the south, or defendant's, half of the pavement. This physical evidence was consistent with, and supportive of, de-

fendant's claim, but it did not completely destroy plaintiffs' evidence so as to permit but one inference. Today's high powered vehicles do fantastic maneuvers when their speed is interrupted by collisions. The mangled vehicles and scars on the highway ofttimes leave bizarre patterns which defy intelligent reconstruction of the events that actually occurred. There was evidence that the left front of defendant's truck went over the line about two feet to strike plaintiff Jenkins' vehicle. There was also evidence that it then drove the Jenkins vehicle back in the direction from which it had been coming for about 150 to 175 feet before the big truck left the highway to its right. In our view, it would not have been impermissible for the jury to infer that after the initial blow, the defendant's truck swung back to its own side of the road, carrying the Jenkins vehicle with it. The jury could likewise infer that the "dug out" place in the pavement was made by defendant's truck while it was moving after the impact. Such an inference would not necessarily be in contradiction of the Trooper's statement that "it was caused by the impact of the vehicles." In all events, the jury was not bound to accept the Trooper's conclusion that the jagged place was created at the instant of collision.

It has been properly held that physical facts, photographs, engineer's surveys, and like evidence can sometimes be so uncontrovertible as to completely destroy oral assertions supported only by fallible memory and, fortunately, sometimes to refute deliberate falsehood. Chambers v. Skelly Oil Co., 87 F.2d 853 (CA 10, 1937); Lovas v. General Motors Corp., 212 F.2d 805, 808, (CA 6, 1954); Camurati v. Sutton, 48 Tenn.App. 54, 68, 342 S.W.2d 732; Harris v. Miller, 24 Tenn. App. 332, 144 S.W.2d 7. The physical facts relied on by defendant in this case, however, do not so unerringly destroy plaintiffs' evidence "as to leave defendant's claim as the only permissible inference." Baird v. Cincinnati, New Orleans & Texas Pacific Railway Co., 315 F. 2d 717, 721 (CA 6, 1963).

**2) *Was plaintiffs' Exhibit 5 improperly received?***

A Trooper identified a photograph of the involved highway, Exhibit 5, which admittedly was taken some days after the accident. The witness, however, testified that it correctly portrayed the same condition as existed when he arrived on the scene immediately after the collision. He identified skid marks which supported plaintiffs' claim that defendant's vehicle had crossed the center line into the path of the Jenkins vehicle. The following is part of his testimony as to Exhibit 5:

"Q. Does that photograph show the area of the highway where the accident occurred?

"A. Yes, sir.

"Q. You may state whether or not that gives a reasonably accurate portrayal of the scene of the accident after it occurred.

"A. Yes, sir, it does."

Referring specifically to the tire marks, he said:

"Q. Will you describe those to His Honor and to the jury?

"A. That was, that is tire tracks, skid marks, put there by the tractor-trailer.

\* \* \* \* \*

"Q. Now, then, were those tire marks fresh or were they old when you got there?

"A. They were fresh."

An objection to the exhibit, made when it was merely identified as being a picture of the scene, was sustained. It was admitted, however, without further objection, after the above quoted questions and answers established it to be an accurate portrayal of the conditions of the highway immediately following the occurrence. No objection was made to the officer's conclusional observation that the skid marks had been made by defendant's vehicle. A photograph adequately identified as correctly portraying conditions as they existed at the time of the event under consideration is admissible even though taken at some distance in time from the occurrence of the event. Inaccuracies or unreliability can be exposed by cross-examination. Hughes v. State, 126 Tenn. 40, 67, 68, 148 S.W. 543. Whether such exhibits are sufficiently identified as to be reliable evidence is usually a matter within the discretion of the trial judge. Stone v. Chicago M. St. P. & R. Co., 53 F.2d 813, 815 (CA 8, 1931); Moore v. Louisville & Nashville R. Co., 223 F.2d 214, 216 (CA 6, 1955). No error was committed in admitting Exhibit 5.

**3) *Introduction of and instructions on the mortality tables.***

Contrary to defendant's assertion, there was evidence that some of Whaley's injuries would be permanently disabling and painful. The District Judge instructed the jury on the mortality tables, as follows:

"Mortality tables have been introduced in this case that deal with the life expectancy of persons of the deceased's age as well as the age of Mr. Whaley at the time of his injuries, and these tables may be considered by you in arriving at the amount of damages, if any, to be awarded, in the event you find in favor of the plaintiffs or either of them or both of them.

"Life expectancy, as shown by a mortality table, is merely an estimate of the probable average remaining length of life of all persons in our country of a given age, and that estimate is based on not a complete but only a limited record of experience. So the inference which may be drawn from the life expectancy shown by the table applies only to one who has the average health and exposure to danger of people of that age. In considering the life expectancy of the plaintiffs, you should consider, in addition to what is shown by the table of mortality, all other facts and circumstances in evidence bearing on the life expectancy of the

plaintiffs, including their occupation, habits and state of health at or immediately before the accident resulting in death to one and personal injuries to the other."

Appellant asserts that "the trial judge failed to instruct the jury in his charge that they could disregard the computation under the mortality table and reach a valuation independently of them."

■ Defendant proffered no request for an instruction on the use to be made of the mortality tables and did not object to the language employed by the District Judge. Even if we felt that the judge's charge was less than perfect, the absence of any objection to it, in this case, forecloses our consideration of the point. Rule 51, F.R.Civ.P.; Solomon v. United States, 276 F.2d 669, 676 (CA 6, 1960); McPherson v. Hoffman, 275 F.2d 466, 471 (CA 6, 1960).

4) *Photographs of Whaley's injuries.*

■ Error is charged in the admission of two colored photographs, Exhibits 43 and 48, taken of Whaley, and showing some of his injuries as they existed while he was in the hospital between February 10, 1962, and April, 1962. The attending doctor identified the pictures as a fair representation of Whaley's condition as of the time they were taken. He could not, however, give the exact date of the taking. Defendant asserts that without information as to the dates of taking the pictures, they should not have been admitted. Defendant does not specify how the lack of the exact date was prejudicial. We would not condone, nor should a trial judge, the use of lurid photographs, paraphernalia, or other trappings of showmanship to enhance a plaintiff's verdict. We have examined the photographs in question and we are not persuaded that proper trial conduct was offended by their admission. Whether failure to fix the date when these pictures were taken should forbid their being received in evidence, was a matter within the trial judge's discretion. Kortz v. Guardian Life Ins. Co., 144 F.2d 676, 679 (CA 10,

1944). See cases gathered in annotation at 9 A.L.R. (2) 915, 925.

5) *Claimed contributory negligence of plaintiffs.*

■ Appellant asserts that the plaintiff Whaley and the deceased Jenkins were guilty of contributory negligence as a matter of law. No motion for a directed verdict on this ground was made. The District Judge, under a proper instruction, submitted the question of proximate and remote (Tennessee rule) contributory negligence to the jury. Under the proofs, contributory negligence was a jury question. Schindler v. Southern Coach Lines, 188 Tenn. 169, 175, 217 S.W.2d 775; Osborn v. City of Nashville, 182 Tenn. 197, 203, 185 S.W.2d 510.

6) *Was the $100,000 Whaley verdict excessive?*

Plaintiff Frank L. Whaley was 36 or 37 years of age at the time he was injured. He was in good health and able bodied prior to the involved accident. He was earning about $65.00 per week as a heavy equipment operator for the Tennessee State Highway Department. He was severely injured in the accident. A doctor who attended him said, "When I first saw Mr. Whaley, I think he was probably the most or at least one of the most, severely injured patients that I have ever seen." In addition to many deep cuts, bruises and general wounds, he sustained second and third degree burns on the back of his thighs and legs; he had comminuted fractures of both bones of the left arm and a fracture and dislocation of the left wrist; the left femur or thigh bone was "broken into many pieces" and he had a comminuted fracture of the right femur; he had "compound lacerations of the left knee * * * it extended into the joint and into the bone * * * there were small breaks in the knee cap on the left and also of the thigh bone at the knee on the left * * * the whole knee joint was opened up;" "there was a fracture and dislocation of the area of the foot * * * it is in the mid-portion of the foot where the tarsal bones join into the

bones that extend to the toes." The attending surgeon described the surgery and medical attention that was employed to put this man together again. Nails, pins and wires were put into him to hold alignment of reset, broken bones; casts were applied, skin grafts were made, traction was used and many other of the devices and skills of modern medicine made up the care that was given. Whaley of course suffered pain as a result of his injuries and the measures applied in their treatment. He had had some five operations up to the time of trial and it was expected that he would have to enter the hospital again for the removal of some of the nails and pins and it was thought likely that one of his knee caps would have to be taken out. While exact percentages of permanent disability were not given, the medical evidence was that Whaley would be permanently disabled, at least partially, and would experience increasing development of painful traumatic arthritis.

 We think the jury's award of $100,000 was not excessive as compensation for Whaley's present and future damages. Such was the view of the District Judge in denying defendant's motion for a new trial. It was first the jury's responsibility to fix the award of damages, Reeves v. Catignani, 157 Tenn. 173, 176, 7 S.W.2d 38, and their decision is not subject to interference by the trial judge "unless so excessive * * * as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury * * * or upon a consideration of elements not within the scope of the action." 25 C.J.S. "Damages" § 196. It is familiar law that, absent abuse of discretion or clear mistake, the judgment of the judge who presided at the trial that a verdict was not excessive will control. Cross v. Thompson, 298 F.2d 186, 187 (CA 6, 1962).

7) *Other charged errors.*

We have considered other charges of reversible error and consider them to be without merit.

The judgments are affirmed.