Gene W. GUNN, Plaintiff-Appellant,

v.

INTERNATIONAL HARVESTER COM-PANY, Defendant-Appellee.

No. 16621.

United States Court of Appeals
Sixth Circuit.

Sept. 28, 1966.

Jesse E. Johnson, Jr., Memphis, Tenn., Burch, Porter & Johnson, Memphis, Tenn., Ford, Ford & Crow, Kennett, Mo., on brief, of counsel, for appellant.

James M. Manire, Memphis, Tenn., John H. Harris, Jr., Memphis, Tenn., on brief; Chandler, Manire, Johnson & Chandler, Memphis, Tenn., of counsel, for appellee.

Before O'SULLIVAN, EDWARDS and CELEBREZZE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Appellant Gene W. Gunn, plaintiff in the action involved, appeals from a summary judgment entered in favor of defendant-appellee, International Harvester Co., in the District Court for the Western District of Tennessee. On the facts revealed and admitted in the pleadings, the discovery deposition of the plaintiff, and the affidavits on file in the case, the District Judge held that plaintiff Gunn had, as a matter of law, been guilty of contributory negligence which barred his negligence action against International Harvester. This is a diversity case.

The facts before the Court were as follows: At about 7:30 or 8:00 P.M. on June 19, 1962, plaintiff Gunn arrived with a tractor-trailer unit at defendant's loading platform in Memphis. Gunn was regularly employed elsewhere, but had been loaned to a common carrier to drive its truck on the trip here involved. He was to pick up a load of disassembled "hay dryers" and haul them to St. Paul, Minnesota, from Memphis, Tennessee. The dryers were in three sections: steel covers, some eight to ten feet long in a half barrel shape, loaded at the front of the trailer; the bodies of the dryers loaded in the mid-section; and the wheels at the rear. Gunn had had no prior experience hauling heavy machinery on an open flat-bed truck of the kind used on this trip.

The loading procedures were carried out by defendant's employees. The parts were stacked on the truck and tied down with wire. As the loading was being done, Gunn mentioned to an employee of defendant that the covers were being loaded in such a way that they would catch the wind, and otherwise questioned the manner of loading. He was told, in effect, to mind his own business and leave the loading to those who were familiar with how to do it. After three or four hours, the loading was completed and Gunn was told by those who had done the loading that everything was all right and ready to go.

Gunn made his first stop at Dyersburg, Tennessee, some seventy-five miles from Memphis. He noticed that some of the covers had shifted, and a couple of the wires had parted. He twisted the wires back together and resumed his journey, thinking that there was no serious problem. There was evidence to show that this would be the normal practice of an independent trucker carrying such a load.

When Gunn stopped at Clinton, Kentucky, he found that the covers had shifted again and some other wires had broken. He once more twisted the wires together and continued on his way. By the time he reached Cedar Rapids, Iowa, on the morning of June 21, Gunn had stopped to adjust his load at least five or six times, and possibly nine or more times, but on none of these occasions did he have any serious problems.

In Cedar Rapids, Gunn once more climbed up onto the trailer to adjust the covers and refasten the wires. However, this time while he was pushing the covers back into place, he saw a wire unravelling and before he could make a needed correction, the covers came loose and pushed him off the truck, causing the injury complained of.

Defendant's motion for summary judgment asserted that Gunn, by undertaking to drive the allegedly insecurely loaded truck and continuing to drive it after its insecurity was made apparent by the breaking of the wires, assumed the risk involved and was guilty of contributory negligence. The motion was sustained.

 The Tennessee rule and the authorities announcing it are recited in Osborn, et al. v. City of Nashville, 182 Tenn. 197, 203, 204, 185 S.W.2d 510, 513 (1945):

> "It is elementary that when there is material evidence that either of the parties has acted with a lack of care and the lack of care is causally connected with the injury, a jury question is created:
>
> > " 'The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery.' Carey Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 36, 37, 164 S.W. 1183, 1185 [51 L.R.A.,N.S., 340].
> >
> > " 'The question of the defendant's liability lawfully can be withdrawn from the jury and determined by the court as a question of law, when and only when the facts are undisputable, being stipulated, found by the court or jury, or established by evidence that is free from conflict, and when the inference from the facts is so certain that all reasonable men, in the exercise of a fair and impartial judgment, must agree upon it.' [cases cited]"

This rule has been consistently and expressly approved in later Tennessee cases, and by this Court: Schindler v. So. Coach Lines, Inc., 188 Tenn. 169, 175, 217 S.W. 2d 775 (1949); Williams v. Jordan, 208 Tenn. 456, 470, 346 S.W.2d 583 (1960) (dissenting opinion); Broome v. Parkview, Inc., 49 Tenn.App. 725, 732–733, 359 S.W.2d 566 (1962); Doane Agr. Service, Inc. v. Coleman, 254 F.2d 40, 43 (CA 6, 1958); see also Miller v. Chattanooga Auto Parts, Inc., 350 F.2d 851, 852 (CA 6, 1965). It is familiar general law.

 Under such rule we are of the opinion that this case should not have been disposed of summarily under Rule 56 Fed.R.Civ.P. Gunn's discovery deposition and affidavit could be fairly read as indicating that he was, as a reasonably prudent man, dissuaded from his doubt as to the proper loading of the truck by the assurances of those more experienced in such work. We believe that resolution of the question whether all reasonable men would conclude that Gunn was contributorily negligent in mounting the back of the truck to attempt to refasten the load, rather than at some point either turning around and returning all the way to Memphis, or pulling off the road and seeking to have International Harvester send some men out to completely reload the truck, should await full development of the facts upon trial. Whether Gunn's conduct in repeatedly taking steps to protect the load and his own safety was so foolhardy as to convict him, as a matter of law, of contributory negligence is a question better answered in the full context of an evidentiary hearing.

We have so recently expressed our reluctance to approve summary disposition of such a case as the one at bar, that fresh dissertation of our views is unnecessary.

In Rogers v. Peabody Coal Co., 342 F.2d 749 (CA 6, 1965) we said:

"It is clear that where a moving party supports his motion for summary judgment by appropriate means, which are uncontroverted, the trial judge is fully justified in granting relief thereon. However, it is further clear that summary judgment should be granted with caution and only where the movant has established the nonexistence of any genuine issue of fact. That showing made must be construed in the light most favorable to the party opposing the summary judgment and that party should be accorded all favorable inferences that may be deduced from the showing. The reason for this being that a party should not be deprived of an adequate opportunity to fully develop his case by witnesses in a trial where the issues involved make such procedure the appropriate one. S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235, 237 (6 Cir. 1963) and cases cited therein.

"Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is and no genuine issue of fact remains for trial. The purpose of the rule is not to cut litigants off from the right to trial by jury if they really have issues to try. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

" * * * This Court has previously noted that there is eminent authority in support of the proposition that issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner. Aetna Insurance Company v. Cooper Wells & Company, 234 F.2d 342, 344 (6 Cir. 1956), citing 6 Moore's Federal Practice (2d ed.) § 56.17 [42] at p. 2232 and cases cited at note 4 therein. It is only in the exceptional negligence case that the rule should be invoked. Furlong v. Stichman, 24 F.R.D. 400 (D.C.S.D.N.Y. 1959). And even where the trial judge reasonably may surmise that plaintiff is unlikely to prevail upon a trial, that is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them. Harl v. Acacia Mutual Life Insurance Company, 115 U.S.App.D.C. 166, 317 F.2d 577, 580 (1963) citing with approval Sprague v. Vogt, 150 F.2d 795, 801 (8 Cir. 1945)."

We do not separately discuss the asserted defense of assumption of risk. Whether in Tennessee there may be cases, not involving master and servant, where such a defense has independent significance, this case is not one of them:

"The application of the doctrine [assumption of risk] is often simply another way of applying the rule of contributory negligence, and frequently the difference between the two is merely a difference in the choice of language or style of expression." Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 70, 118 S.W.2d 561.

■ Defendant also argues in its brief that plaintiff was in violation of a regulation of the I.C.C.:

"49 C.F.R. 193.9(b) *Fastenings Secure.* No motor vehicle shall be driven unless the driver thereof shall have satisfied himself that the tailboard or tailgate, tarpaulins, spare tires, and all means of fastening the load are securely in place." [now 49 C.F.R. 192.9(b)]

and was, therefore, guilty of contributory negligence *per se.* However, apart from the fact that this regulation could hardly have been intended to afford a haven for negligent shippers in suits by injured truck drivers, plaintiff certainly could not be said to be violating the regulation while he was stopped by the side of the road, and engaged in attempting to secure those very "means of fastening the load."

■■ The final issue raised by defendant was that Gunn's actions constituted an independent intervening cause of the injury. Tennessee has adopted the

test of the Restatement of the Law of Torts, § 443: "An intervening act of a human being or animal which is a normal response to the stimulant of a situation created by the actor's negligent conduct, is not a superseding cause * * *" McKinnon v. Michaud, 37 Tenn.App. 148, 157, 260 S.W.2d 721, 725 (1953), and also the parallel test from Section 49, page 266 of Prosser, Torts, (2d ed.) (1955) "The defendant ordinarily will not be relieved of liability by an intervening cause which could reasonably have been foreseen. * * *" Smith v. Henson, 214 Tenn. 541, 552–553, 381 S.W.2d 892, 897 (1964). Determination of whether to allow a jury to decide that, under the evidence that such was the practice of truckers, defendant should have foreseen that Gunn would try to adjust the load himself, should likewise await a trial.

The judgment summarily entered is vacated and the cause remanded for further proceedings.