Clarence **DUCKWORTH**, Sr., et al.,
Plaintiffs-Appellees,

v.

**GREYHOUND LINES, INC.**, et al.,
Defendants-Appellants.

Clarence **DUCKWORTH**, Sr., et al.,
Plaintiffs-Appellees,

v.

**GREYHOUND LINES, INC.**, et al.,
Defendants-Appellants.

Lizzie **KING** et al., Plaintiffs-Appellees,

v.

**GREYHOUND LINES, INC.**, et al.,
Defendants-Appellants.

Evelyn **HOOD**, Plaintiff-Appellee,

v.

**GREYHOUND LINES, INC.**, et al.,
Defendants-Appellants.

Nos. 71–2018–71–2021.

United States Court of Appeals,
Sixth Circuit.

Oct. 19, 1972.

Rehearing Denied in Nos. 71–2020,
71–2021 Jan. 8, 1973.

Wm. F. Kirsch, Jr., Memphis, Tenn., (Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., on the brief), for appellants.

Joe D. Spicer, Memphis, Tenn., for Clarece Duckworth Sr., and others.

Richard J. Ryan, Memphis, Tenn., for Evelyn Hood.

Eugene D. Lyne, Memphis, Tenn., for Lizzie King, and others.

Olen C. Batchelor, Jr., Memphis, Tenn. (Holt, Batchelor, Taylor, Spicer & Hoffman, John P. Colton Jr., Memphis, Tenn., on the brief), for appellees.

Before WEICK and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

In a jury trial in the United States District Court for the Western District of Tennessee, in which two wrongful death actions and two personal injury actions were combined, judgments were recovered by plaintiffs-appellees against defendants-appellants, Greyhound Lines, Inc., and Leander F. Davenport, as follows:

Clarence Duckworth, Sr., and Marshall Duckworth as parents of minors Glendora Duckworth, age 20, and Charles Duckworth, age 17, eight thousand dollars on behalf of each minor child for wrongful death; Lizzie King and Walter King, her husband, ten thousand and nine thousand dollars, respectively, as a result of injuries sustained by Lizzie King as a passenger in a bus of the Greyhound Lines; Evelyn Hood, forty-five hundred dollars against Greyhound Lines, Inc., only, as a result of injuries sustained as a passenger in the same bus.

Defendants-appellants, Greyhound Lines, Inc., and Leander F. Davenport, appeal.

The actions arose out of a collision between a Greyhound bus driven by Leander F. Davenport, and an automobile at the intersection of United States Highway 70 and Tennessee State Highway 138 in Madison County, Tennessee. The bus in which Lizzie King and Evelyn Hood were passengers was traveling west on U. S. Highway 70. The automobile in which Glendora and Charles Duckworth were passengers, driven by their brother Clarence Duckworth, Jr., was traveling north on State Highway 138.

Route 70 is a preferential Highway and vehicles on 138 are required to stop before entering it. Approaching from the south on Highway 138 the highway was well marked advising a motorist that a stop was required before entering upon the intersection ahead. There was a black and yellow intersection sign 862 feet from the intersection, two black and yellow signs side by side, stating "Stop Ahead" 382 feet from the intersection, and two standard size red stop signs at the intersection together with other signs indicating the intersection. There were trees and shrubbery on the southeast corner of the highway which may have obstructed, to some extent, the view from Route 70 south on Highway 138. The speed limit in the area of the intersection on Route 70 was sixty-five miles per hour.

■ Clarence Duckworth, Jr. drove his automobile at a high rate of speed, estimated at 100 miles per hour, into the intersection without stopping and struck the bus on the left front side with such force that it knocked it off the highway to the north and into a ditch where it overturned. The driver of the automobile was guilty of gross negligence without which the collision would not have happened. His negligence, however, cannot be imputed to his passengers, Glendora and Charles Duckworth.

In order for any of the appellees to recover they must establish negligence on the part of the bus driver which concurring with the negligence of the driver of the automobile was the proximate cause of the collision.

■■ The Greyhound Lines, through the driver of its bus at the time and place of the collision, owed to its passengers, including Lizzie King and Evelyn Hood, the highest degree of care compatible with the practical operation of its bus. In other words negligence for a public carrier of passengers is the failure to exercise the greatest and highest degree of care and caution approved by human knowledge and experience and consistent with the nature, extent and

operation of its business. Wallin v. Greyhound Corp., 341 F.2d 521, 523 (6th Cir. 1965); Memphis St. Ry. Co. v. Bobo, 232 F. 708, 711 (6th Cir. 1916), aff'd 243 U.S. 299, 37 S.Ct. 273, 61 L. Ed. 733 (1916); Schindler v. Southern Coach Lines, 188 Tenn. 169, 174, 217 S. W.2d 775, 777 (1949).

■ The duty of Greyhound Lines, through its driver, Leander F. Davenport, toward the passengers in the automobile was to use ordinary care for their safety. The failure to use ordinary care is negligence. "Ordinary care is that degree of care which a person of reasonable prudence would exercise under . . . the same or similar circumstances". Smith v. Roane-Anderson Co., 30 Tenn.App. 458, 207 S.W.2d 353 (1947); Dixon v. Lobenstein, 175 Tenn. 105, 132 S.W.2d 215 (1939); Long v. Tomlin, 22 Tenn.App. 607, 125 S.W.2d 171 (1938); Nashville, C. & St. L. Ry. Co. v. Wade, 127 Tenn. 154, 153 S.W. 1120 (1913).

■ In determining whether the driver of the bus was negligent in any respect there are two presumptions of law to be considered. The law presumes that he could have seen what was in plain view to be seen. The law also presumes that he had a right to assume that the driver of the automobile would obey the law, that is that he would stop before entering the intersection. The driver of the bus had a right to rely on this assumption until it became obvious that the driver of the automobile was not going to stop.

We consider here a factual situation. Under the most favorable view of the evidence for the plaintiffs-appellees was there any evidence that the driver of the bus failed to use that degree of care which he owed to his passengers, King and Hood, for their safety or that he failed to exercise ordinary care for the safety of Glendora and Charles Duckworth, passengers in the automobile?

We conclude that there is no evidence that the driver of the bus failed to use the proper degree of care in either situ-

ation and accordingly reverse as to each of the appellees.

We consider first the claim of the appellees that Davenport, the driver of the bus, was driving at an excessive rate of speed under the circumstances.

The plaintiff-appellee, Mrs. Hood, testified: "The bus was traveling at a high rate of speed."

Being asked if she could be more definite, she said, "(E)xcept for the fact that it seemed to be swaying as it traveled along the road * * * so it seemed to be swaying and we were going very, very fast, and I couldn't say, I couldn't see the speedometer."

Asked whether it was swaying unusual in relation to other buses, she said, "It was unusual."

"Prior to seeing the car I had begun looking from side to side, because I had become afraid." She was afraid, "Because of the rapid rate the bus was traveling."

On cross examination, "(T)he bus seemed to be swaying a bit and it was going extremely fast * * *." "Well it was going at a speed that it was frightening."

In a deposition taken at the hospital two hours after the accident, she said, "He wasn't driving too fast. They all drive, you know, the usual speed." * * * "No, I don't think he was speeding."

Plaintiff-appellee, Lizzie King, testified: "I don't know what happened, but the driver was driving so fast I think that's when I fainted, and I don't know nothing else until they took me over to the Jackson, Tennessee Hospital."

Before the accident happened? "Yes, sir, this bus was speeding, if ever a bus was speeding. I rode many a bus, but I never rode as fast as this bus was."

"What I think about it, I think the bus was going so fast I fainted because I don't remember just exactly what happened. I remember the bus was rocking so much it put me to sleep, or done something to me."

She couldn't remember how fast the bus was traveling at the time of the accident. "No, I couldn't remember, I was asleep. * * * It was traveling faster than I ever rode a bus in my life." When she was awake she estimated the speed. "Oh, probably sixty or seventy miles." * * * "He was passing cars on the highway, the driver was."

Joe Willie Mustain, a passenger on the bus testified with reference to speed: "Yes, sir, I could pretty well. I ride a lot of different cars, trucks and buses, and I would say the bus was doing maybe fifty, or no more than fifty-five miles per hour at the time."

Mrs. Margaret Marie Springfield, a passenger on the bus at the time of the collision, testified that the bus was not being driven in an unusual way.

Leander F. Davenport, the driver of the bus testified: that there was a governor on the bus which limited the speed of the bus to sixty-five miles per hour and that it was working perfectly; that he was traveling fifty-five to sixty miles per hour coming out of Jackson and that as he approached the intersection he took his foot off of the accelerator and was slowing down to about fifty miles per hour. On cross examination he said that one hundred yards east of the intersection the speed was about fifty-five or sixty miles per hour.

■ Considering all of this evidence relative to speed we conclude that there is no evidence that the bus was traveling at an excessive rate of speed. There is no contradiction to the evidence that a governor working perfectly, set at sixty-five miles per hour would regulate the maximum speed of the bus at that rate. The conclusions of Mrs. Hood and Mrs. King as to speed can not put in issue the maximum speed of the bus as regulated by the governor. The speed limit on the highway was sixty-five miles per hour. There was no evidence

of negligence on the part of the driver of the bus as to speed to go to the jury.

■ It is claimed on behalf of all of the appellees that if the bus driver had been keeping a proper lookout he could have seen the automobile traveling at its high rate of speed far enough from the intersection to have stopped to avoid the collision, knowing that at the speed the automobile was traveling it could not stop at the intersection. At best this claim is based on unsupported inferences. The only evidence of the speed of the automobile is that it was traveling one hundred miles per hour. At this speed it would travel one hundred forty-six feet per second.

Mrs. Hood places the bus six hundred fifty feet from the intersection at the time she first saw the automobile approaching the intersection. If the bus were traveling fifty to sixty miles per hour it would take it seven to eight seconds to reach the intersection. There is no evidence that the driver of the bus could have stopped the bus at the speed he was going within seven or eight seconds. She does not give any relative distance of the automobile approaching the intersection at one hundred forty-six feet per second. In eight seconds the automobile would travel eleven hundred sixty-eight feet.

The Reverend L. H. Hood, husband of plaintiff-appellee Evelyn Hood, testified that he measured the distance, from the point where his wife said she first saw the automobile to the intersection, to be seven hundred fifty feet. Traveling at a speed of fifty to sixty miles an hour it would have taken the driver of the bus eight to ten seconds to reach the intersection from the point where Mrs. Hood first saw the automobile.

The only witness who testified to the relative distances of the bus and the automobile from the intersection is passenger Joe Willie Mustain. He says that he first saw the gleam of the automobile when it was three hundred yards (900 ft.) from the intersection. At the time the bus was between one hundred fifty and two hundred feet from the intersection and traveling fifty to fifty-five miles per hour. The automobile was traveling one hundred miles per hour or over.

At the speed of the automobile it would have taken it six seconds plus to go nine hundred feet to the intersection while the bus at its speed would have taken two to three seconds to go one hundred fifty to two hundred feet to the intersection.

We deal here with conflicting estimates of distances and speed of two vehicles, one the automobile, according to the only evidence before us, traveling one hundred miles per hour and the other, the bus, traveling from fifty to sixty miles per hour and not to exceed sixty-five miles per hour. These estimates are at best uncertain and they do not lend themselves to mathematical solution. They do, however, point up the facts that the driver of the bus had only seconds in which to make decisions and take action. We can not say that under the most favorable view of the evidence for the appellees there were any circumstances under which the driver of the bus was confronted that he could have stopped the bus in time to avoid the collision. The conduct of the driver of the bus was not the proximate cause of the collision.

In Garrett v. McConkey, 466 S.W.2d 498 (Court of Appeals of Tenn., Western Section, Cert. Den. Supreme Court, Apr. 5, 1971) where a drunk driver entered the road without lights on his car and a collision with a bus ensued, the conduct of the driver of the bus was held not to be the proximate cause of the collision even though he was driving sixty-five miles per hour in a fifty-five miles per hour zone.

The Court said,

"The bus driver could not have seen the vehicle but a few feet before he stated he saw it, and these few feet become insignificant when it is plain that the immediate cause of the collision was the negligence of Willocks."

See also, Tennessee Trailways, Inc. v. Ervin, 222 Tenn. 523, 438 S.W.2d 733.

Counsel for Lizzie King relies strongly on the testimony of some witnesses that the automobile could be seen from the bus when it was at the crest of the downhill grade on Highway 138, a distance estimated at 900 feet from the intersection. He does not fix the relative distance of the bus from the intersection at that point. As we pointed out above the automobile would arrive at the intersection in six seconds. The bus driver would have had to make an instant decision that the automobile was not going to stop. Counsel infers that having made this instant decision the driver of the bus could have stopped his bus in time to avoid the collision. This inference is unsupported by evidence as to the distance the bus was from the intersection and how long it would take the driver to stop at the speed he was traveling. Mr. Mustain testified that when the automobile could be seen from the bus 900 feet from the intersection the bus was only 150 to 200 feet from the intersection.

We conclude that there was no evidence to submit to a jury, that the driver of the bus failed to exercise the proper degree of care for the safety of his passengers, Lizzie King and Evelyn Hood. Since there was no breach of legal duty by the defendants toward plaintiffs-appellees, King and Hood, there could be none toward the Duckworth minors.

Reversed and remanded with instructions to dismiss the complaints of all of the plaintiffs-appellees.

EDWARDS, Circuit Judge (concurring in part and dissenting in part).

The testimony in this case shows beyond all doubt that the driver of the Duckworth car was primarily responsible for this accident. I also agree with Judge Cecil's analysis of the record as showing conclusively that there was no lack of ordinary care on the part of the Greyhound bus driver. As a consequence, I join the opinion of the court in reversing the judgments based on the deaths of the passengers in the Duckworth car.

I would, however, affirm the jury verdicts as to the plaintiffs who were passengers in the bus. Tennessee case law imposes a higher degree of care than ordinary care upon common carriers for hire. The rule is effectively stated in the language of the Tennessee Supreme Court in the following cases:

*A carrier of passengers is not an insurer of the safety of its passengers, but it is held to the exercise of the highest degree of care and foresight for the passenger's safety.* Knoxville Cab Co. v. Miller, 176 Tenn. 88, 138 S.W.2d 428, 429 (1940). (Emphasis added.)

There is some discussion in the briefs as to whether Mrs. Schindler was a passenger at the time she received the injury. The reason for this discussion is that the *public carrier is charged with the exercise of a high degree of care as distinguished from ordinary care, with reference to those who are passengers on its vehicle.* The act of getting into the bus for transportation is, of course, an essential element of becoming a passenger. I think, therefore, that in consideration of this petition we should regard Mrs. Schindler as a *passenger,* and *hence that the Bus Company owed to her the duty of exercising a high degree of care in admitting her to the bus.* Schindler v. Southern Coach Lines, 188 Tenn. 169, 217 S.W.2d 775, 777–778 (1949). (Emphasis added.)

*See also,* Wallin v. Greyhound Corporation, 341 F.2d 521, 523 (6th Cir. 1965).

Here several of the bus passengers testified that they saw the Duckworth car approaching the highway at a speed estimated at 100 miles an hour. Obviously it was not going to obey the stop sign which faced it. If the bus driver had seen it when the bus passengers did, an emergency application of brakes might well have allowed the speeding vehicle to pass in front of the bus.

The driver's testimony, however, was that he did not see the Duckworth car until it was in the intersection and only ten feet away.

Whether or not the driver's observations were consistent with the highest degree of care under the circumstances concerned was, as the District Judge ruled, a matter of disputed fact for jury consideration.

I would affirm the verdicts in favor of the plaintiffs who were passengers on the bus.