**Ollie Mae WHITE, Plaintiff/Appellee,**

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY and Metropolitan Transit Authority, Defendants/Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

March 17, 1993.

Permission to Appeal Denied by Supreme Court June 28, 1993.

Patricia J. Cottrell, Director of Law, Philip D. Baltz, Metropolitan Government Dept. of Law, Nashville, for defendants/appellants.

Alan M. Sowell–Gracey, Ruth, Howard, Tate & Sowell, Nashville, for plaintiff/appellee.

OPINION

KOCH, Judge.

This appeal involves a passenger who fell while riding in a city bus. The passenger filed suit against the Metropolitan Government of Nashville and Davidson County in the Circuit Court for Davidson County. The trial court, sitting without a jury as required by the Governmental Tort Liability Act,[1] concluded that the driver of the bus had been negligent and awarded the passenger $24,-000. The Metropolitan Government has appealed. We have determined that the evidence does not support the conclusion that the bus driver was negligent and, therefore, reverse the trial court.

### I.

Ollie Mae White was a 67–year–old switchboard receptionist who worked in downtown Nashville. She customarily rode a Metropolitan Transit Authority ("MTA") bus both to and from work. At the end of the work day on October 30, 1990, she was one of approximately eight passengers who boarded an

---

1. See Tenn.Code Ann. § 29–20–307 (Supp.1992).

MTA bus at the Deadrick Street transit mall. Mrs. White boarded ahead of several other passengers and, after paying her fare, walked toward the rear of the bus to find a seat. Mrs. White did not see a seat to her liking even though the bus was only partially full, and so she decided to sit in one of the seats at the very front of the bus. The bus began moving as Mrs. White turned to take one of these seats, and she fell to the floor after trying to grab one of the nearby passenger poles.

The driver stopped the bus immediately and went to Mrs. White's assistance. Mrs. White told him that she was not injured and that she did not require an ambulance. She stayed on the bus until she reached her destination. After experiencing back pain during the night, Mrs. White consulted a physician the following day. Mrs. White's physician referred her to an orthopaedic surgeon who discovered that Mrs. White suffered from chronic degenerative disc disease. He also "suspected" that she had fractured her sacrum.

In August 1991 Mrs. White filed suit against the Metropolitan Government of Nashville and Davidson County, alleging that the bus driver had negligently failed to allow his boarding passengers enough time to find seats before starting the bus. Following a bench trial in May 1992, the trial court found that the driver's negligent failure to observe his passengers before starting the bus proximately caused Mrs. White to fall. The trial court also found that Mrs. White was negligent because she failed to take a seat sooner than she did. Accordingly, the trial court determined that Mrs. White's damages should be discounted by 20% based on her own negligence and awarded her $24,000.

## II.

Mrs. White can recover from the Metropolitan Government only if MTA's driver was operating the bus negligently and if the driver's negligence proximately caused her injury. The driver's operation of the bus could only have been negligent if he breached a duty he owed to Mrs. White when the injury occurred. Since the driver did not owe a duty to Mrs. White to refrain from starting the bus before she was seated, we respectfully differ with the trial court's conclusion that the driver was negligent.

## A.

The existence of a duty owed to the plaintiff by the defendant is a necessary ingredient in every negligence action. *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991); *Shouse v. Otis*, 224 Tenn. 1, 7, 448 S.W.2d 673, 676 (1969); *Fly v. Cannon*, 813 S.W.2d 458, 461 (Tenn.Ct.App.1991). In this context, a duty is a legally recognized obligation to conform to a particular standard of conduct toward another. *Lindsey v. Miami Dev. Co.*, 689 S.W.2d 856, 858 (Tenn. 1985). It is a reflection of society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's conduct. *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn.Ct.App.1992).

All persons have a duty to use reasonable care in light of the surrounding circumstances to refrain from conduct that could foreseeably injure others. *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn.Ct.App. 1990). Since reasonable care is a flexible concept, this court has recognized that some occasions and circumstances may require a higher degree of care than others. *Phelps v. Magnavox Co.*, 497 S.W.2d 898, 906 (Tenn.Ct. App.1972); *Fortune v. Holmes*, 48 Tenn.App. 497, 507, 348 S.W.2d 894, 899 (1960).

Duty is the standard by which the reasonableness of conduct is measured. Conduct consistent with an actor's duty in particular circumstances is not negligent; while conduct falling below the applicable standard of care is. *McClenahan v. Cooley*, 806 S.W.2d at 774. Thus, the standard of care is intimately related to an actor's duty and relates to what an actor must do or refrain from doing in order to satisfy the applicable duty. *Dooley v. Everett*, 805 S.W.2d at 384. In cases tried without a jury, the existence of a duty and the extent of the applicable standard of care are for the court

to decide based on the evidence and mixed considerations of logic, common sense, and public policy.

Courts customarily define the scope of a duty or a particular standard of care by looking to the statutes, regulations, principles, and other precedents that make up the law. *Dill v. Gamble Asphalt Materials,* 594 S.W.2d 719, 721 (Tenn.Ct.App.1979); Restatement (Second) of Torts § 285 (1964). However, they may also consider evidence that tends to establish a custom representing the common judgment concerning the risks of a particular situation and the precautions required to meet them. Restatement (Second) of Torts § 295A cmt. b (1964). Thus, company work rules, while not controlling, are admissible to demonstrate what the company's employees should have done in a particular situation. 3 Fowler V. Harper, et al., *The Law of Torts* § 17.3 at 587 (2d ed. 1986); Fleming James, Jr. & David K. Sigerson, *Particularizing Standards of Conduct in Negligence Trials,* 5 Vand.L.Rev. 697, 712–13 (1952); *Petriello v. Kalman,* 215 Conn. 377, 576 A.2d 474, 479 (1990).

### B.

Common carriers owe a heightened duty of care to their passengers. Consistent with the practical conduct of their business, they must exercise the utmost diligence, skill, and foresight, to provide for their passengers' safety. *Schindler v. Southern Coach Lines, Inc.,* 188 Tenn. 169, 173–74, 217 S.W.2d 775, 778–79 (1949); *Memphis St. Ry. v. Cavell,* 135 Tenn. 462, 465, 187 S.W. 179, 180 (1916); *Oliver v. Union Transfer Co.,* 17 Tenn.App. 694, 699, 71 S.W.2d 478, 481 (1934).

As broad as their duty is, common carriers are not insurers of their passengers' safety. Passengers must still exercise ordinary care for their own safety. *Schindler v. Southern Coach Lines, Inc.,* 188 Tenn. at 177, 217 S.W.2d at 779; *Gray v. Brown,* 188 Tenn. 152, 157, 217 S.W.2d 769, 771 (1949). Accordingly, passengers must observe the surrounding conditions and must protect themselves from the risks and hazards that ordinarily accompany the conveyance they are using. *Perry v. Knoxville Ry. & Light Co.,* 6 Tenn.Civ.App. (Higgins) 243, 252 (1916).

Starting and stopping are movements commonly associated with buses and other common carriers. The law, therefore, imposes on passengers the knowledge that public conveyances will start with a jerk, lurch, or other movement when they begin operation. *Perry v. Knoxville Ry. & Light Co.,* 6 Tenn.Civ.App. (Higgins) at 252–53. Accordingly, the courts have consistently recognized that bus drivers may, as a general rule, anticipate that passengers will be aware of that fact and may start their bus in a normal motion before all the passengers are seated. *Montgomery City Lines v. Hawes,* 31 Ala.App. 564, 20 So.2d 536, 538 (1944); *Cannon v. Delaware Elec. Power Co.,* 41 Del. 415, 24 A.2d 325, 326 (1942); *O'Callahan v. Wichita Transp. Corp.,* 150 Kan. 280, 92 P.2d 23, 25 (1939); *Alexander v. New Orleans Pub. Serv., Inc.,* 411 So.2d 641, 643 (La.Ct. App.1982); 13 C.J.S. *Carriers* § 549a (1990); 14 Am.Jur.2d *Carriers* § 1016 (1964).

The general rule concerning starting buses before all the passengers are seated does not apply when the driver starts the bus in an abnormal or abrupt manner. It also does not apply when passengers are laboring under some apparent infirmity or disability. *Carolina Coach Co. v. Bradley,* 17 Md.App. 51, 299 A.2d 474, 477 (1973). Common carriers will be held to a higher standard of care with regard to aged or infirm passengers whose age or infirmity is apparent from their appearance. *Memphis St. Ry. v. Shaw,* 110 Tenn. 467, 474–77, 75 S.W. 713, 714–15 (1903); *Southern Ry. v. Mitchell,* 98 Tenn. 27, 30–31, 40 S.W. 72, 73 (1896).

MTA's own operator's manual recognizes that drivers have a greater obligation to apparently infirm or incapacitated passengers. Rule 7 provides:

> Elderly, handicapped persons or children must be given any necessary assistance by the operator. It is the operator's duty to watch for elderly or handicapped persons alighting at the center door. These passengers shall be encouraged to alight at the front door for additional safety.

With specific regard to the circumstances of this case, Rule 9 provides:

> The operator must wait to move the bus until elderly and handicapped persons, pregnant women, women carrying babies, and any others who appear incapable of seating themselves while the bus is in motion, are seated.

### C.

 Mrs. White had been a regular MTA bus rider for over twenty-five years before she fell. She stated that drivers frequently started their buses before all passengers had been seated and conceded that she had ridden on buses that had started while she was still standing "many times" before. The bus driver echoed Mrs. White's testimony when he stated that drivers frequently start their buses while passengers were still standing.

The record contains no evidence that Mrs. White needed special assistance. She insisted at trial that she was not handicapped. Notwithstanding Mrs. White's white hair, the driver stated without contradiction that she did not appear to be an "elderly *and* handicapped" person who needed the type of assistance required by Rule 9. The trial court did not find that Mrs. White was entitled to special assistance. Accordingly, we find that the general rule applies in this case and that the driver was not required to wait for her to be seated before starting the bus.

Likewise, the record contains no evidence that the driver did not give Mrs. White sufficient time to find a seat. In fact, the trial court specifically found that Mrs. White's failure to take a seat in a timely manner contributed to her injury and reduced her recovery accordingly.[2]

The driver in this case did not start the bus in an abnormal or abrupt manner. Under the circumstances, he did not start the bus too quickly because Mrs. White did not appear to require special assistance. Since the driver was not required to delay starting the bus until Mrs. White found a seat, he was not negligent because he started the bus in his normal, customary manner without first looking in his rear view mirror to ascertain whether Mrs. White and his other passengers were seated.

### III.

We reverse the judgment and remand the case to the trial court for whatever other proceedings may be required. In accordance with Tenn.R.App.P. 40(a), we tax the costs to the Metropolitan Government of Nashville and Davidson County.

TODD, P.J., and LEWIS, J., concur.

---

2. The trial court specifically found that "[Mrs.] White could have situated herself safely in the handicapped seats had she not, first, attempted to walk to a seat further back in the bus then, realizing her misjudgment, traversed back to the handicapped seats."