IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 13, 2009 Session

## LaFRANCINE GIBSON, as Surviving Relative and Next Friend of GEORGIA JONES, Deceased v. METRO COMMUNITY CARE HOME, INC., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-002341-06      Rita L. Stotts, Judge

No. W2008-02417-COA-R3-CV - Filed December 15, 2009

The trial court awarded summary judgment to Defendant common carrier, finding that Defendant had no notice that Decedent was mentally incapacitated and holding that Defendant had no duty to assess or probe Decedent in order to discover a latent or non-apparent psychological condition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Les Jones, R. Porter Feild and Frank B. Thacher, III, Memphis, Tennessee, for the appellant, LaFrancine Gibson.

Christopher S. Campbell and Michael F. Rafferty, Memphis, Tennessee, for the appellees, Yellow Cab Company.

Linda J. Mathis, Memphis, Tennessee, for the Appellee, Wassie W. Wassie.

## OPINION

This is an action for personal injury and wrongful death. Decedent Georgia Jones (Ms. Jones) was an 83-year old resident of Metro Community Care Home ("Metro Care"), an independent living facility located at 1328 Mississippi Boulevard in Memphis. Ms. Jones suffered from dementia and had a history of becoming disoriented and confused. On September 2, 2005, she was transported by ambulance from Metro Care to the Regional Medical Center at Memphis ("the Med") with complaints of abdominal and chest pain. A physical exam performed at the Med revealed that Ms. Jones was "not oriented to place/date/time." She was discharged on September 6. A licensed social

worker, Eva Arnold (Ms. Arnold), an employee of the Med, was assigned to coordinate Ms. Jones' discharge.

Ms. Arnold called Yellow Cab Company ("Yellow Cab) to transport Ms. Jones back to Metro Care. Ms. Arnold provided Ms. Jones with a voucher, or third party payer slip, reciting 1328 Mississippi as Ms. Jones' destination and a charge of $7.80. Once inside the taxi, Ms. Jones instructed the cab driver, Mr. Wassie W. Wassie (Mr. Wassie), to take her to 662 Hollywood Street, where she once had lived. Ms. Jones told Mr. Wassie that she did not have a key to 1328 Mississippi; pointed to the house on Hollywood where she wanted to be delivered; and Ms. Jones exited the taxi and walked up to the front door of the home. Mr. Wassie watched Ms. Jones walk up to the front door and drove away after a child opened the front door. Ms. Jones was later found dead on the front porch of the home; the cause of death was determined to be cardiac arrest.

In May 2006, Plaintiff LaFrancine Gibson (Ms. Gibson), acting as Ms. Jones' surviving relative and next friend, filed a complaint for personal injury and wrongful death in the Circuit Court for Shelby County. Ms. Gibson named Metro Community Care Home, Inc.; Shelby County Health Care Corp.; Yellow Cab Company; Checker Cab Company of Memphis; and Dennis Blanker as Defendants. Dennis Blanker was voluntarily dismissed in August 2006, and Mr. Wassie was added as a Defendant by consent. The trial court entered a consent order dismissing Metro Care with prejudice in August 2008. In September 2008, the trial court entered a consent order of compromise, settlement and release as to Shelby County Health Care Corp. d/b/a the Med. Checker Cab also was dismissed by consent order.

Defendants Yellow Cab and Mr. Wassie moved for summary judgment in June 2008. In their motion, Defendants stated that, with respect to them, the lawsuit involved a dispute as to whether Ms. Jones' death was caused by the failure to deliver her to the Mississippi Boulevard address as opposed to the Hollywood address. In their statement of undisputed facts, they asserted that neither Ms. Arnold nor any other employee of the Med or of Metro Care informed Mr. Wassie of Ms. Jones' medical condition or mental capacity, or the lack thereof. They further referenced Mr. Wassie's deposition in support of their assertion that Ms. Jones did not appear confused. In her response, Ms. Gibson asserted that a genuine issue of material fact existed as to whether Defendants "took all practical measures to care for Ms. Jones while in their transit." She asserted that Defendants did not exercise their utmost diligence, skill and foresight considering Ms. Jones' age and infirmity, and that a genuine issue of material fact existed with respect to whether Defendants breached their heightened duty of care to Ms. Jones. Ms. Gibson contended that Defendants' own procedural guidelines required Mr. Wassie to check with the dispatcher before taking Ms. Jones to an address which differed from that on the voucher. She also asserted that Defendants had failed to affirmatively negate the element of proximate cause.

The trial court entered summary judgment in Defendants' favor September 23, 2008. In its order, the trial court stated that Defendants had no notice of Ms. Jones' mental incapacity and had "no duty to assess or probe Ms. Jones to learn of her latent or non-apparent psychological conditions." Ms. Gibson filed a timely notice of appeal to this Court.

## *Issues Presented*

Ms. Gibson presents the following issues for our review:

1. Did the Lower Court err in defining the duty owed by a common carrier to its passenger?

2. Did the Lower Court err in finding that reasonable minds could not disagree as to whether Defendants breached the duty they owed to Georgia Jones and that Defendants were therefore entitled to summary judgment?

3. Should the trial court have found that Defendants' motion for summary judgment did not affirmatively negate the essential element of causation?

4. Should the trial court have found that reasonable minds could disagree as to whether Defendants' negligence was the proximate cause of injury and death to Georgia Jones?

## *Standard of Review*

We review a trial court's award of summary judgment *de novo*, with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04). The burden is on the moving party to demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citations omitted).

After the moving party has made a properly supported motion, the nonmoving party must establish the existence of a genuine issue of material fact. *Id.* (citations omitted). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.06 of the Tennessee Rules of Civil Procedure. *Id.* (citations omitted). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's favor. *Id.* (citations omitted). A disputed fact that must be decided to resolve a substantive claim or defense is material, and it presents a genuine issue if it reasonably could be resolved in favor of either one party or the other. *Id.* (citations omitted).

*Analysis*

The trial court in this case awarded summary judgment to Defendants upon determining that Defendants had no notice of Ms. Jones' mental infirmity and that they had no duty to independently assess or probe Ms. Jones in order to determine whether she was mentally competent to direct them to convey her to the Hollywood address rather than the address recited on the voucher. Duty is the first element that must be determined in an action for negligence. *White v. Metro. Gov't of Nashville and Davidson County*, 860 S.W.2d 49, 51 (Tenn. Ct. App. 1993)(citations omitted). Duty for the purposes of a negligence claim is the obligation recognized by the law to conform to a particular standard of care in order to protect against an unreasonable risk of harm to another. *McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 894 (Tenn. 1996) "It is a reflection of society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's conduct." *White*, 860 S.W.2d at 51. The determination of the existence of a duty is a question of law. *E.g., Draper v. Westerfield*, 181 S.W.3d 283, 291 (Tenn. 2005)(citation omitted). We review the trial court's determinations on questions of law *de novo*, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Once the court has determined that the defendant in a negligence action owes plaintiff a duty, the question of whether the defendant has breached his duty and thereby caused plaintiff's injury are matters to be determined by the finder of fact. *Patterson-Khoury v. Wilson World Hotel-Cherry Road*, 139 S.W.3d 281, 285 (Tenn. Ct. App 2003). With this standard of review in mind, we turn to whether the trial court erred by concluding that Defendants "had no duty to assess or probe Ms. Jones to learn of her latent or non-apparent psychological conditions."

**Duty to Assess for Non-apparent Conditions**

In her brief to this Court, Ms. Gibson asserts, "[b]ecause the law recognizes a specific and heightened duty attaches to common carriers by virtue of the special relationship they hold with their passengers, the trial court erred by finding that 'plaintiff must show that Mr. Wassie and Yellow Cab Company had notice of Ms. Jones' latent or non-apparent psychological conditions' in order to show the existence of a duty." Defendants, on the other hand, argue that this position would expand the duty of a common carrier beyond that of an insurer of their passengers' well-being. They assert that the position advocated by Ms. Gibson would require taxicab drivers to make "an independent and expert assessment of a passenger's mental status based solely on the passenger's age and limited physical ability to ambulate."

It is well-settled that all persons have a broad duty to use reasonable care in order to avoid causing foreseeable injury to others. *E.g., Draper*, 181 S.W.3d at 291 (citation omitted). It is also well-settled that common carriers owe their passengers a heightened duty of care and that, "[c]onsistent with the practical conduct of their business, they must exercise the utmost diligence, skill, and foresight, to provide for their passengers' safety." *White v. Metro. Gov't of Nashville and Davidson County*, 860 S.W.2d 49, 52 (Tenn. Ct. App. 1993) (citing *Schindler v. Southern Coach Lines, Inc.*, 188 Tenn. 169, 173-74, 217 S.W.2d 775, 778-79 (1949); *Memphis St. Ry. v. Cavell*, 135 Tenn. 462, 465, 187 S.W. 179, 180 (1916); *Oliver v. Union Transfer Co.*, 17 Tenn. App. 694, 699,

-4-

71 S.W.2d 478, 481 (1934)). When a passenger's age or infirmity is apparent from their appearance, common carriers will be held to a higher standard of care. *Id.* However, common carriers are not insurers of their passengers' safety. *Id.*

In this case, it is undisputed that Mr. Wassie was not informed by Ms. Arnold of Ms. Jones' medical condition or her compromised mental capacity. Although Ms. Jones was elderly and obviously had been hospitalized, Defendants undisputedly had no knowledge of Ms. Jones' hospital records or medical history. Ms. Gibson, however, asserts that, in light of the heightened duty of care imposed on a common carrier, she was not required to demonstrate that Defendants had notice of Ms. Jones' impaired mental capacity in order to demonstrate that Mr. Wassie had a duty to deliver Ms. Jones to the Mississippi Boulevard address provided on the voucher. She further asserts that Yellow Cab's guidelines for taxi drivers with respect to voucher contract trips evidence this duty.

We turn first to Ms. Gibson's assertion that Yellow Cab's guidelines demonstrate that Mr. Wassie had a duty to seek direction from Yellow Cab before conveying Ms. Jones to an address other than that on the voucher. Defendants assert that the section of the guidelines referred to by Ms. Gibson are not relevant to determine the existence of a duty to a passenger, but to billing procedures. Although not controlling, company rules are admissible to ascertain what the company's employees should have done in a particular situation. *Id.*

As Ms. Gibson asserts, Yellow Cab's "Guidelines for Taxi Drivers" states:

Remember that the passenger is seldom the paying customer on a (voucher) contract trip. Only the paying customer is authorized to direct you, authorize stops, waiting time, or change the destination of the trip. Unlike your cash trips where the passenger is also usually the customer you can not bill a difference for following the passengers directions without the clients approval.

When uncertain, make a voice request and ask the dispatcher for guidance. You are not alone.

We cannot agree with Ms. Gibson's assertion that this provision in Yellow Cab's guidelines evidence a duty to Ms. Jones to deliver her to the Mississippi Boulevard address and not an alternate address provided by her. Rather, the provision relates to the extent to which a driver may expect to receive payment for a voucher trip under "charge accounts [established] for many organizations, businesses and only a very few individuals for a convenience to drivers." This notice to drivers appears in the guidelines section entitled "charge tickets/contracts." The section states that "[d]rivers may honor these vouchers as cash toward their check off," and that "[t]he Yellow Cab Charge Ticket is, when utilized correctly, a simple and self-explanatory form to expedite correct billing." The section further states, "[a]ny charge tickets with incomplete or erroneous information may be billed back to you, so please check them carefully. It is your money."

We agree with Defendants that the paragraph relied on by Ms. Gibson, when read within the context of the guideline section, pertains to billing procedures. The section outlines the extent to which the driver may expect to be paid for a trip exceeding that authorized by the voucher. This paragraph does not prohibit a driver from conveying a passenger to an alternate address, and it does not evidence a legal duty to independently assess a passenger's mental capacity to provide an alternate address where the driver has no notice of the passenger's incapacity or mental infirmity.

We turn, then, to whether Defendants owed Ms. Jones a duty to independently assess whether she was mentally competent to direct Mr. Wassie to take her to the Hollywood address rather than the Mississippi Boulevard address recited on the voucher. This question requires us to consider whether a common carrier owes a passenger a duty to assess that passenger for latent, non-apparent mental or psychological conditions which might impede the passenger's mental capacity. Common carriers will be held to a higher standard of care with regard to aged or infirm passengers whose age or infirmity is apparent from their appearance. *White v. Metro. Gov't of Nashville and Davidson County*, 860 S.W.2d 49, 52 (Tenn. Ct. App. 1993)(citations omitted). This duty does not extend, however, to infirmities which are not apparent in the absence of actual knowledge. We must agree with Defendants that, in the absence of notice of Ms. Jones' impaired mental capacity, Defendants had no duty to engage in an independent assessment requiring specialized skill or experience in order to discover a latent, non-apparent infirmity.[1]

Neither a passenger's age nor physical disability would relieve a taxicab driver of his obligation to convey the passenger to their requested destination. Indeed, section 6-80-52 of the Memphis Ordinances provides:

> Every driver of a taxicab shall have the right to demand payment of the regular fare in advance and may refuse employment unless so paid, but no driver of a taxicab shall refuse or neglect to convey any orderly person or persons upon request anywhere in the city, unless previously engaged or unable to do so.

Although actual notice or apparent mental impairment or incapacity would give rise to a higher duty to convey a passenger to an address provided by a responsible third party, we agree with Defendants that, in the absence of notice or apparent impairment, to impose a legal duty on taxicab drivers to probe and assess each passenger's mental capacity to instruct the driver to convey them to a valid address would be impractical and unreasonable. As we noted in *White*, the court must determine the existence of a duty "based on the evidence and mixed considerations of logic, common sense, and public policy." *White*, 860 S.W.2d at 51-52. In this case, we agree with the trial court's conclusion that, in the absence of any contractual obligation, corporate policy, instruction by the Med, or notice or appearance of mental infirmity, Defendants did not have a duty to independently assess Ms. Jones' mental capacity to instruct Defendants to convey her to a valid address within the city. In the absence of notice or apparent mental infirmity, confusion or incapacity, it would defy common sense

---

[1]We note that this case does not involve any contractual obligation between Yellow Cab and the Med or Metro Care to deliver patients to an address provided by them.

to require a taxicab driver to assess and probe a passenger's capacity to direct conveyance to a valid address merely on the basis of the passenger's advanced age or recent discharge from hospitalization.

### *Existence of a Genuine Issue of Material Fact Regarding Apparent Infirmity*

We must consider, however, whether summary judgment was appropriate in this case in light of Ms. Gibson's assertion that Ms. Jones' mental infirmity was apparent. We agree with Defendants that Mr. Wassie could not be charged with knowledge of Ms. Jones' medical history. It is also undisputed in this case that Mr. Wassie was not advised of Ms. Jones' mental incapacity or dementia by personnel at the Med. In her memorandum in opposition to Defendants' motion for summary judgment, however, Ms. Gibson asserted that a genuine issue of material fact exists with respect to whether Ms. Jones exhibited signs of dementia or confusion while in Defendants' taxicab. Ms. Gibson asserted that Mr. Wassie's testimony that Ms. Jones was lucid and competent when she was in the taxicab "strains belief since it is directly contrary to the medical diagnoses she received in the several days before at The Med." She asserted that, in light of Ms. Jones' medical records and history, Mr. Wassie's testimony that Ms. Jones was lucid while in the taxicab was not reasonable.

As noted above, there is no dispute in this case that Defendants, a common carrier, owed Ms. Jones a high standard of care. There is nothing in the record to indicate, however, that Ms. Jones' mental infirmity or diminished mental capacity was apparent when she was in Mr. Wassie's presence. On the contrary, the record indicates only that Ms. Jones required some physical assistance to enter the taxicab.

Further, we cannot agree with Ms. Gibson that Ms. Jones' age and recent hospitalization put Mr. Wassie on notice of diminished mental capacity. We decline to extend the duty of a common carrier to its passenger so far as to require taxicab drivers to inquire about the mental health or capacity of their passengers merely on the basis of age. In this case, Mr. Wassie watched Ms. Jones walk up to the home on Hollywood after exiting the taxicab, and he waited until the door was opened to her before departing. He clearly took her advanced age into account. Ms. Gibson has not pointed to any evidence in the record that would create a genuine issue of material fact regarding whether Ms. Jones' diminished mental capacity was apparent to one without knowledge of her medical history.

### *Holding*

In light of the foregoing, we affirm summary judgment in favor of Defendants. Costs of this appeal are taxed to Appellant, LaFrancine Gibson, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE