IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 16, 2018 Session

## CAROLYN CRISP v. MICHAEL NELMS, ET AL.

### Appeal from the Circuit Court for Blount County
### No. L-18929     Rex H. Ogle, Judge

### No. E2017-01044-COA-R3-CV

This appeal arises from a lawsuit over a fatal cycling accident.  Carolyn Crisp ("Plaintiff"), surviving spouse of William Andrew Crisp ("Decedent"), sued Michael Nelms ("Nelms") and George Long ("Long") ("Defendants," collectively) in the Circuit Court for Blount County ("the Trial Court") for negligence.  Decedent and four others, including Nelms and Long, were riding as part of a "paceline" group when a crash occurred.  Nelms asserted comparative fault, stating that Long slowed down suddenly at the head of the line.  Long denied he slowed down suddenly.  Defendants filed motions for summary judgment.  The Trial Court held, among other things, that paceline cycling inherently is dangerous and that Decedent was at least 50% at fault for his accident. Plaintiff appealed to this Court.  We hold, *inter alia*, that there is a genuine issue of material fact as to whether Long slowed down suddenly at the head of the line and whether a reasonable jury could find Decedent less than 50% at fault in his accident.  We reverse the judgment of the Trial Court and remand for the case to proceed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

David T. Black, Melanie E. Davis, and Carlos A. Yunsan, Maryville, Tennessee, for the appellant, Carolyn Crisp.

P. Alexander Vogel, Knoxville, Tennessee, for the appellee, Michael Nelms.

Rick L. Powers and William A. Ladnier, Knoxville, Tennessee, for the appellee, George Long.

# OPINION

## Background

On February 25, 2014, five people embarked on a cycling expedition along the shoulder of U.S. Highway 321 near Townsend, Tennessee. The group was riding in a paceline, an activity wherein cyclists ride in a line one after the other in close quarters. This action serves to increase the efficiency of the ride as the riders draft off one another to counteract the wind resistance. At the front of the line was Long. Behind Long was Nelms. Richard Cox was third. Decedent was fourth, and Stacy Napier was at the back of the line. This was not a group of novices. Rather, these were seasoned cyclists riding expensive bicycles. Long and Decedent, friends since childhood and regular cycling companions, were in their 70s.

The cyclists left Cycology, a bicycle shop on U.S. highway 321 in Blount County, at 10:30 a.m. The riders were traveling at a speed of about 22 miles per hour. Around noon, the incident occurred. Nelms' front tire struck Long's back tire. Nelms wrecked and fell to the pavement. Cox, third in line, swerved and avoided Nelms. Decedent, fourth, steered right but wound up flying off his bicycle and landing on his head. Hospital records reflect that "another rider hit" Nelms. Nelms denies that Decedent hit him, asserting instead that Decedent sharply applied his breaks and thereby caused his own misfortune.

Decedent was rendered quadriplegic by the wreck. Decedent dictated a note to Nelms, stating in part: "I think it is important for you to know that I place no blame on you for the accident . . . it was just one of those things that you cannot understand." On August 22, 2014, Decedent died.

In February 2015, Plaintiff, Decedent's widow, sued Nelms in the Trial Court. In April 2015, Nelms filed an answer denying liability. Nelms raised the defense of comparative fault and stated that Long may have been negligent in causing the incident. In June 2015, Plaintiff filed an amended complaint, this time including Long as a defendant. In August 2015, Long filed an answer acknowledging that Nelms struck his bicycle but denying that he slowed down. Long raised the defense of comparative fault with respect to Nelms and Decedent. Discovery ensued.

Timothy Joganich, a bicycle safety expert testifying for Plaintiff, stated in his deposition:

> Q. All right. The last sentence here, "The collision with Mr. Nelms' bike and the wheel of Mr. Long's" -- strike that. "The collision with Mr. Nelms'

bike and with the wheel of Mr. Long's bike shows that these duties were breached by Mr. Nelms." That is an opinion you will be giving?

A. Yes.

Q. If Mr. Long's bike slowed suddenly, and Mr. Nelms' front wheel contacted Mr. Long's back wheel, would that be a breach of a duty by Mr. Nelms?

A. You have to define "suddenly" because this is really a control systems problem. The reality is there is a variation in speed of all the cyclists out there, even the one in front. Now, it may be so subtle and so small that you may not perceive it. The fact is that the rider out in front has the duty to maintain a constant pace as possible, and then all the riders following have to respond to any variation in input. Now, if for reason the rider out in front had an emergency braking where the following riders would not respond in time, then you are going to have a crash. In this case, I don't see anything in the evidence to support Mr. Long slowing down in a sudden manner to the point where Mr. Nelms could not respond.

Q. Okay. Well, you read Mr. Nelms' deposition, did you not?

A. Correct. He said that he slowed down suddenly. But when you look at all the other evidence, even Mr. Nelms said that there was nothing in the roadway that he saw -- I should backup and say that the only reason why the rider is going to slow down is for some external factors such as something in the roadway -- I'm talking about an emergency type of condition such as a deer runs out or a squirrel runs out, and that happens all the time. It happens to our group, but there's no evidence of anything like that happening. Mr. Long testified that he was going to go at a constant pace all the way to River Road, so there's no reason for him to slow down. The only other reason for him to slow down is he were going to pull off and switch positions, but there's no evidence of that.

Q. Well, there's been testimony that there was a strong headwind that day. Are you going to give any opinion about the wind conditions on the day of the accident in question?

A. I will certainly refer to it because that is an issue in the case, and it's been discussed in the depositions.

Q. Well, while we are on that topic, and I will cover it again, but I don't see that you give any opinion in your affidavit or in this letter where you discuss the wind conditions. Are you sticking to that?

A. Well, it's not going to be a main point. It may be a sub opinion based on some of the main opinions I'm talking about. If you asked me, was there a wind at the time, then I'm going to talk to you about what the others said and what the climatology report says.

Q. Okay. When Mr. Long says that there was a strong headwind that day, do you have any reason to dispute that?

A. Well, I will say there's conflicting testimony in that regard because Ms. Napers doesn't remember any wind, and Mr. Nelms only suspects that there was a strong wind, so yes, Mr. Long did testify there was a wind. Now, when you look at the climatology records in that time frame, we are talking 8 to 10 miles an hour with the wind coming predominantly out of the north, and it gives the wind direction, 330 degrees.

Q. Are you ruling out wind as any possible contribution to any of the accidents?

A. I don't see it playing a significant role.

***

Q. You state in paragraph 16 that the front wheel of Mr. Crisp's bicycle subsequently ran into Mr. Nelms. Now, you understand that that statement, that fact, is disputed?

A. It's in the medical records.

Q. That was my next question.

A. Okay.

Q. What do you rely on to come to that conclusion?

A. A couple things. One is primarily the medical records. I will refer you --

Q. The medical records of whom?

A. Mr. Nelms. I will refer you to the specific record. I'm referring to the Care Today Clinic. It's for Michael Nelms. Let's see if there's a date on it. The date is 2/25/14. The time is 7:23. Under HPI, which is history of the patient, it says, "Riding bicycle approximately 22 miles an hour, wrecked, and another rider hit him." When you look at that evidence in the context of all of the other testimony of the other riders that avoided the pileup, logically, you can only conclude it was Mr. Crisp hitting Mr. Nelms. Then Stacy testified that Mr. Crisp hit Mr. Nelms' bike. Well, everything is happening so quick, but both the bike and Nelms are on the ground, so bike versus Mr. Nelms, so I can see where there would be some confusion, and it may have been both.

James Green, a forensic engineer specializing in bicycle wreck reconstruction hired by Nelms, also was deposed. Green testified in part:

Q. You said you were employed to determine causation. Can you tell us whether or not this accident would have happened but for Mr. Nelms hitting the bicycle in front of him and losing control and wrecking?

A. Well, I'm not sure I can answer it the way you've phrased it. If you're -- let me see if I understand your question and I'll try to answer it. Are you asking me if the accident to Mr. Crisp would have occurred if Mr. Nelms had not hit the bike ahead of him, or are you asking me what -- are you asking me causation, I guess is my question to you, to answer your question?

Q. No. I'm asking you this question, and however you interpret it. But my question is, would this accident have happened -- not have happened but for the fact that Mr. Nelms hit the bicycle in front of him?

A. I'm not -- I'm not sure. If you isolate it just to the series of events, I would say it wouldn't. But if you're looking at causation in terms of the whole scenario, I'm going to say that you basically had four gentlemen in their 70s, and I'm 71, riding -- riding bikes in a tight paceline on a very, very windy day where wind was coming from several different directions over time, and it really isn't an appropriate thing to do, in my opinion. I don't ride pacelines anymore, and I used to race as a pro. So -- and I'm very familiar with riding in that area. I just don't see -- if you're going to ride in a paceline, even as a pro, in your 20s and 30s, eventually you're going to wreck riding in one. It's just a very dangerous activity. It's not a safe activity.

***

Q. Would you[r] opinion be different if you assume these facts. That Mr. Nelms says that he was struck by another bicyclist, that Mr. Crisp says that he struck Mr. Nelms and that's what caused him to hit and go over the handlebars, and that he had no time to apply his brakes. If those facts were true, would your opinion differ?

A. Well, those -- first of all, those aren't facts. Those are fact statements. Witness statements. And no, it wouldn't change my opinion, because it does not line up with the engineering data that I've already given you in the record. The two of them -- for me to accept the fact witness statement it's got to agree with the engineering, and the engineering is not supporting that statement. It's not supporting your hypothetical on Nelms or your hypothetical on Crisp.

Nelms and Long filed motions for summary judgment in April and May 2016, respectively. In September 2016 following a hearing, the Trial Court entered an order

granting Defendants' motions for summary judgment. In its oral ruling attached to its order, the Trial Court stated in part:

> This is obviously a very tragic case, loss of life and just -- there's nothing that anybody can do to obviously change this. My first thought, as I have read through these things, is that there is no difference here in how this proceeded than a stock car race. Everybody bunched together.
>
> You know, back in the old days, Dale Earnhardt, Sr., would run you off the road, and there you were off the track, and there you were in the wall. But by its very nature, NASCAR -- granted higher speeds -- is different, but they've got steel and helmets and everything else. This type of activity, in a sense, is no different than that.
>
> These gentlemen were riding together. It is very reasonable to assume -- and well, it's a fact -- that it's not seriously disputed that an accident, when they are riding this closely together, is certainly foreseeable on everybody's part. And unfortunately, something happened up front that caused people to slow. But as it relates to Mr. Crisp, the Court would have to leap to assumptions in order to say what he did or what he didn't do, and he owed himself a duty of reasonable care to see what was in front of him and to understand his surroundings as well.
>
> It would also -- as I have understood it and read it -- and counsel, this Court, as I've said many times, I cannot guarantee you I'm right, but I guarantee you I try to be right. From my reading of the record, from the affidavits, that there is no basis other than sheer speculation that would allow a jury to find for the plaintiff in this case.
>
> In fact, speculation is pretty much all there is in this case. We could allow them to speculate about certain facts, but the ultimate conclusion is, is that these types of accidents are foreseeable in bicycle racing, especially this close type of racing. We see it all the time. We pass them on the highways. I'm not taking -- well, I think I could take judicial notice that cyclists in group activities wreck.
>
> And so these parties chose to engage in this activity. They chose to ride together. There's testimony throughout about what happens when these cyclists are riding together, about drafting, about various movements on the surface that they are cycling on.
>
> And the Court hates to do it, but the Court does not see how any jury could reasonably find that either of these defendants were negligent in the cause -- the cause in fact or the proximate cause of the tragic accident and injury and ultimate death o[f] Mr. Crisp.

***

[T]he Court also holds that no jury -- that the actions of Mr. Crisp were at least -- his actions were at least fifty percent of the cause of his own accident.

In October 2016, Plaintiff filed a motion to alter or amend and a request for findings of fact and conclusions of law. In May 2017, the Trial Court entered an order denying Plaintiff's motion, stating:

After considering the plaintiff's motion and the responses thereto, the Court finds as follows:

1. That the Memorandum Opinion was issued by the Court and incorporated in the Order Granting the Motion for Summary Judgment on September 29, 2016.

2. That the plaintiff mistakenly understood the Court to infer that the parties were racing. That was not the intention nor finding of this Court. The Court was merely referencing to the fact that bumper to bumper activities by automobiles or bicycles can lead to disastrous consequences.

3. That the plaintiff's basic position is that she does not know what happened, but that she wants a jury to try this matter.

4. That taken in a light most favorably to the plaintiff, there are no genuine issues of material fact upon which a claim of negligence against the defendants could be found.

5. That the unexplained cause or causes of the accident in question could not require a finding of negligence.

6. That because Mr. Crisp chose to ride in the activity of paceline riding where it is certainly foreseeable that an accident could occur, the Court finds that a reasonable jury would have to find that he was at least 50% liable for his own injuries.

From all of which it is hereby **ORDERED, ADJUDGED, AND DECREED** that the above, along with the Court's Memorandum Opinion, are the findings and fact and conclusions of law, and that no further hearing on this particular issue shall be considered by the Court, and that this order is hereby deemed a final order in all respects. Any remaining court costs are hereby taxed to the plaintiff, for which execution shall issue if necessary.

Plaintiff timely appealed to this Court.

**Discussion**

We restate and consolidate the issues Plaintiff raises on appeal into the following dispositive issue: whether the Trial Court erred in granting summary judgment to Defendants.

As our Supreme Court has instructed regarding appellate review of a trial court's ruling on a motion for summary judgment:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)). . . .

> \* \* \*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56],"

to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial. . . .

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

Defendants argue that paceline riding is an inherently risky activity as described by the experts and participants, especially for a rider of Decedent's age. Nelms argues that Decedent had his own duty to adhere to, as well. Plaintiff argues in response that no rider in a paceline assumes that the person riding in front of him suddenly and inexplicably will slow down. Our initial inquiry is whether a duty of care exists in paceline riding and what the nature of that duty is.

The case of *Becksfort v. Jackson* is highly instructive. In *Becksfort*, a woman was injured while participating in a tennis drill at a club. We discussed as follows:

In *Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994), our Supreme Court abolished implied assumption of the risk as a complete bar to recovery in a negligence action and held that cases involving implied assumption of the risk issues should be analyzed under the principles of comparative fault and the common law concept of duty. The Court stated that "the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault. Attention should be

-9-

focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk." *Id.* at 905.

Everyone has a duty to exercise ordinary and reasonable care in light of the surrounding circumstances to refrain from conduct that could foreseeably injure others, and some locations and circumstances may require a higher degree of care than others. *White v. Metropolitan Government of Nashville and Davidson County*, 860 S.W.2d 49, 51 (Tenn. App. 1993). The term reasonable care must be given meaning in relation to the circumstances. *Doe v. Linder Constr. Co., Inc.* 845 S.W.2d 173, 178 (Tenn. 1992). To establish a claim for negligence a plaintiff must prove: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) injury or loss; (4) causation in fact; (5) and proximate causation. *Haynes v. Hamilton County*, 883 S.W.2d 606, 611 (Tenn. 1994).

\*\*\*

[B]y participating in the drill, Ms. Becksfort did not confront or accept the risk that another player would act or play unreasonably. The plaintiff offered proof that Ms. Jackson knew or should have known that Ms. Becksfort was not watching Jackson's ball, and was rather watching only her (Becksfort's) ball. The plaintiff also offered proof that Ms. Jackson knew or should have known that the ball was traveling in the direction of the plaintiff. Kent Shultz stated in his deposition that during the two ball drill the respective sets of players focused on the ball in play on their half of the court. Mr. Shultz also testified that the shot which Ms. Jackson hit into the eye of the plaintiff was a forehand shot "with some power behind it." Ms. Jackson contended in her deposition that (apparently due to the speed at which the ball was traveling) there simply was no time to issue a warning; however, that appears to be a question of fact upon considering all the circumstances involved.

We think there is sufficient evidence to create a genuine issue of material fact as to whether Ms. Jackson acted unreasonably by failing to warn of the errant shot. Based upon this record, reasonable minds could differ as to whether Ms. Jackson acted reasonably under the circumstances. Therefore, this question should be resolved by the trier of fact.

*Becksfort v. Jackson*, No. 02A01-9502-CV-00027, 1996 WL 208786, at \*2-4 (Tenn. Ct. App. April 30, 1996), *no appl. perm. appeal filed*.

In *Becksfort*, we elaborated upon the duty of care in a sports context as follows:

The reason many courts have required a plaintiff to prove reckless or intentional conduct on the part of a defendant in order to recover for injuries sustained in an athletic competition, is that these courts have feared that an ordinary negligence standard will increase litigation of sports injuries and stifle athletic competition. *See, e.g., Hoke v. Cullinan*, 914 S.W.2d 335, 337 (Ky. 1995) ("A view often expressed is that such a standard promotes sound public policy by allowing redress in extraordinary circumstances without permitting fear of litigation to alter the nature of the game."); *Knight v. Jewett*, 834 P.2d 696, 710 (Cal. 1992) ("The courts have concluded that vigorous participation in sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct."). We do not share these court's concerns with respect to the imposition of an ordinary negligence standard in cases of sports related injuries, because we think that the recognition that the reasonableness of a person's conduct will be measured differently on the playing field than on a public street, will sufficiently prevent the stifling of athletic competition. We also note that the reasonableness of a person's conduct will be measured differently depending upon the particular sport involved and the likelihood and foreseeability of injury presented by participation in the particular sport. What is reasonable, acceptable, and even encouraged in the boxing ring or ice hockey rink, would be negligent or even reckless or intentional tortious conduct in the context of a game of golf or tennis. We should not fashion a different standard of care for each and every sport. We simply recognize that the reasonable conduct standard of care should be given different meaning in the context of different sports and athletic competitions.

*Becksfort*, 1996 WL 208786, at \*3 n. 4.

In the present case, we respectfully disagree with the apparent position of the Trial Court and Defendants that to participate in paceline riding is to assume the risk of whatever dangerous conduct, however unreasonable, is engaged in by the participants. Many years ago, our Supreme Court abolished implied assumption of the risk as a complete bar to recovery. We decline Defendants' invitation to essentially resurrect implied assumption of the risk through a special carve-out exception. Inherently risky or

not, a paceline rider still has a duty of care to her fellow riders. For instance, while wrecks can and do happen, a paceline rider has a duty to refrain from abruptly applying her brakes or from hitting the wheel of the rider of front of her without good reason. We conclude that each paceline rider in the instant case had a duty to act reasonably under the circumstances.

Having concluded that the paceline riders owed a duty of care, it remains to be established in this case at the summary judgment stage whether that duty was breached and by whom. That is problematic because there are conflicting accounts as to what happened. Chiefly, it never has been established how Nelms came to collide with Long's bicycle. Nelms states that Long suddenly slowed down. Long disputes this. Nelms and Long are, therefore, at odds in their accounts. This is not a trivial dispute but rather goes to the heart of the case—whether a breach of duty occurred and, if so, by whom. This is what juries often are called on to decide in a negligence case where comparative fault is alleged. There are genuine issues of material fact as to whether Defendants acted reasonably under the circumstances, and the issue of fault allocation, if any, should be resolved by the trier of fact. We take no position on the merits of the question, only that it remains a question suitable for trial.

The Trial Court, in its order denying Plaintiff's motion to alter or amend, also stated: "[B]ecause [Decedent] chose to ride in the activity of paceline riding where it is certainly foreseeable that an accident could occur, the Court finds that a reasonable jury would have to find that he was at least 50% liable for his own injuries." This is a puzzling and unsupported finding. There were five participants in the paceline group at issue, and three of those were involved in the crash. If Decedent is presumed to be at least 50% responsible for his own accident simply for participating in paceline riding, then the other riders involved in the crash also must be at least 50% responsible simply by participating. The math does not add up as, naturally, one cannot exceed 100% in an allocation of fault. Finding or holding that someone who participates with others in an inherently dangerous activity must be at least 50% at fault if he is injured is, once again, an attempt to resurrect the defense of assumption of the risk. We decline to do so.

As genuine issues of material fact remain unresolved in this case, summary judgment is inappropriate. We reverse the judgment of the Trial Court and remand for further proceedings.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below and for further proceedings consistent with this Opinion. The costs on appeal are assessed one-half equally against the Appellees, Michael Nelms and George Long.

_____
D. MICHAEL SWINEY, CHIEF JUDGE